Leonora M. Schloss (SBN 145142)
JACKSON LEWIS P.C.
725 South Figueroa St., Ste. 2500
Los Angeles, CA 90017
Phone:      (213) 689-0404
Leonora.Schloss@jacksonlewis.com

John Andrew Schaffer (SBN 320905)
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, CA 92618
Phone:      (949) 885-1360
John.Schaffer@jacksonlewis.com

Attorneys for Defendants
MERIDIAN SENIOR LIVING, LLC
and KENNETH KIESWETTER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE SUMMER, an individual,<br><br>                    Plaintiff,<br>   vs.<br><br>MERIDIAN SENIOR LIVING, LLC; KENNETH KIESWETTER, as an individual; and DOES 1 through 100, inclusive),<br><br>                    Defendants. | CASE NO.:  2:21-cv-4051<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332 and 1441**<br><br>Complaint Filed: March 15, 2021<br>Trial Date:         Not Set |

---

CASE NO.: 2:21-cv-4051 | 1 | NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF BONNIE SUMMER AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants MERIDIAN SENIOR LIVING, LLC. and KENNETH KIESWETTER (collectively "Defendants") invokes this Court's jurisdiction under 28 U.S.C. §§ 1332 and 1441 and removes the above-entitled action to this Court from the Superior Court of the State of California, County of Ventura.

## PLEADINGS AND PROCESS

1. On March 15, 2021, Plaintiff Bonnie Summer ("Plaintiff") filed a civil complaint against Defendants Meridian Senior Living, LLC and Kenneth Kieswetter, in the Superior Court of the State of California in and for the County of Ventura entitled Bonnie Summer v. Meridian Senior Living, LLC; Kenneth Kieswetter; et al., Case No. 56-2021-00551949-CU-WT-VTA which sets forth the following two (2) causes of action: (1) wrongful termination in violation of public policy (against only the corporate defendant); and (2) violation of California Labor Code 1102.5 (whistleblower retaliation) against all defendants ("Complaint"). A copy of the Summons, Complaint, and other related court documents received by Defendant Meridian Senior Living, LLC is attached to the Declaration of Mary Short ("Short Declaration") as Exhibit "A."

2. Defendant Meridian Senior Living, LLC first received Plaintiff's Summons and Complaint and related court documents on April 15, 2021.

3. On Friday, April 16, 2021, Defendant Meridian Senior Living, LLC received a Notice of Service of Process – Transmittal Number: 23069911 indicating that Meridian Senior Living, LLC had been served on April 15, 2021 by way of personal service. A true and correct copy of the Notice of Service of Process is attached to the Short Declaration as Exhibit "B".

4. On May 13, 2021, Defendant Meridian Senior Living, LLC filed and served its Answer in Ventura County Superior Court. A true and correct copy of Defendant

Meridian Senior Living, LLC's Answer is attached to the Declaration of John Andrew Schaffer ("Schaffer Declaration") as Exhibit "A."

5. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers promptly will be served on Plaintiff's counsel and filed with the Clerk of the Ventura County Superior Court. Therefore, all procedural requirements under 28 U.S.C. §1446 have been satisfied. A true and correct copy of the Notice to Superior Court and Adverse Party of Defendants' Removal of Action to Federal Court is attached to the Schaffer Declaration as Exhibit "B."

6. Prior to the filing of Defendant's Notice of Removal, defense counsel reviewed the Ventura County Superior Court's online docket regarding the above-captioned action. Based upon defense counsel's review of the docket, and to the best of defense counsel's knowledge, the foregoing constitute all of the process, pleadings, orders, and other documents received by Defendant and/or on file in the state court action in Ventura County Superior Court. [Schaffer Decl. ¶ 4.]

## **THE REMOVAL IS TIMELY AND VENUE IS PROPER**

7. This Notice of Removal has been filed within thirty (30) days after Defendant first received a copy of Plaintiff's Summons and Complaint upon which this action is based. This Notice of Removal is therefore filed within the time period provided by 28 U.S.C. § 1446(b).

8. Venue of this action lies in the United States District Court for the Central District of California, Western Division pursuant to 28 U.S.C. §§ 1441, *et seq.* and 1391(a) because this is the judicial district of this Court in which the action arose, where Plaintiff resides and where the cause of action arose.

9. In accordance with 28 U.S.C. Section 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal, and all supporting papers promptly will be served on Plaintiff's counsel and filed with the Clerk and Ventura County Superior Court. Therefore, all procedural requirements under 28 U.S.C. Section 1446 have been satisfied.

## DIVERSITY JURISDICTION

## COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

10. Defendant properly may remove the Complaint on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332(a) or 28 U.S.C. § 1332(d)(2), because complete diversity of citizenship exists.

11. **Plaintiff is a California Resident**. Plaintiff was, at the time of filing of the Complaint, and still is, a citizen of the State of California within the meaning of 28 U.S.C. § 1332(a). [Complaint ¶ 2.] At all times during her employment with Defendant, Plaintiff lived in California. Additionally, Plaintiff's W-4 provided that she resided in Calabasas, California during her employment [Mary Short Declaration ¶ 6, Exh. C], her HR New Hire Form provided she lived in Calabasas, California [*Id.* at Exh. D], and her last known address at the time of her termination was in Calabasas, California [*Id.* at Exh. E].

12. **Defendant Meridian Senior Living, LLC is a Citizen of North Carolina and Maryland.** Defendant Meridian Senior Living, LLC was, at the time of filing of the Complaint, and still is, a citizen of the State of North Carolina within the meaning of section 1332(c)(1), because it now is and was at all times incorporated under the laws of that state. At all relevant times, Meridian Senior Living's principal place of business and headquarters have been located in Maryland. Further, Meridian Senior Living, LLC's high-level management is located at its headquarters in Maryland. Accordingly, all of Meridian Senior Living, LLC's primary management functions are performed in the State of Maryland. (*Id.*) *See Hertz Corp. v. Friend* (2010) 559 U.S. 77, 130 S.Ct. 1181, 1186 (adopting the "nerve center test" for purposes of ascertaining a corporation's principal place of business for purposes of diversity jurisdiction; "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"). [Mary Short Decl. ¶ 2.]

13. **Individual Defendant Kenneth Kieswetter is improperly joined as a sham and nominal defendant.** Although Plaintiff names individual defendant Kenneth

Kieswetter, a California resident, as an individual defendant, complete diversity still exists by and between the parties because Kieswetter is an improper sham defendant. *Morris v. Princess Cruises, Inc.*, 236 F3d 1061, 1067 (9th Cir. 2001); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232-1233 (9th Cir. 1986) (all defendants must join in removal except nominal, unknown or fraudulently joined parties). Plaintiff's naming of Kieswetter as a party to this action is improper because there is no possibility that Plaintiff can establish liability against Kieswetter based on the allegations in the Complaint for the reasons set forth below.

(a) Joinder of a non-diverse defendant does not preclude diversity jurisdiction when the plaintiff cannot prove a cause of action against that defendant. Under the "sham defendant" or "fraudulent joinder" doctrine, a non-diverse defendant constitutes a "sham" or a "fraudulently joined" defendant if either (1) no viable cause of action has been stated again the non-diverse defendant, or (2) evidence presented by the removing party shows there is no factual basis for the claims alleged against the non-diverse defendant. See, e.g., Morris, 236 F.3d at 1067 (9th Cir. 2001) (When a non-diverse defendant's joinder "is deemed fraudulent," "the defendant's presence in the lawsuit is ignored for purposes of determining diversity . . ."); McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

(b) Under Ninth Circuit authority, defendants are "entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (holding that resident managers joined as defendants in wrongful discharge claim against former employer were joined to defeat diversity jurisdiction and that diversity existed after their citizenship was disregarded).

(c) In her Complaint, Plaintiff alleges only one cause of action against Kieswetter: (2) Violation of California Labor Code § 1102.5 (Whistleblower Retaliation). [Complaint ¶¶ 31-34.] The statutory scheme and California and Federal Court decisions make it clear that a retaliation claim under Labor Code § 1102.5 can only be made against an ***employer***. In the present action, Plaintiff alleges a retaliation cause of action

against the Individual Defendant pursuant to Labor Code section 1102.5 for alleged disclosure of information related to her employer's working conditions. While not a FEHA claim, this is a retaliation claim under the Labor Code that is subject to the same burden shifting analysis. See *Franklin v. Sacramento Area Flood Control Agency* 2009 U.S. Dist. LEXIS 45229 (E.D. Cal., April 29, 2009) (applying the same burden-shifting analysis to plaintiff's claim for Labor Code section 98.6).

(d)   There are numerous federal court decisions finding no individual liability under Labor Code section 1102.5. *See Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1105 (S.D. Cal. 2018); *United States ex rel. Lupo v. Quality Assur. Servs.,* 242 F. Supp. 3d 1020, 1030 (S.D. Cal. 2017); *Tillery v. Lollis*, 2015 U.S. Dist. LEXIS 106845 at * 27 (E.D. Cal. Aug. 13, 2015); *Vera v. Con-way Freight, Inc.*, 2015 U.S. Dist. LEXIS 45424 at *1 (C.D. Cal. Apr. 6, 2015); *Conner v. Aviation Serv. Of Chevron U.S.A.*, 2014 U.S. Dist. LEXIS 156662 at *5 (N.D. Cal. Nov. 5, 2014). The Individual Defendant is not aware of any published California state court opinions addressing individual liability under Labor Code section 1102.5.[1]  However, the reasoning and explanation provided in *Tillery* is instructive. In *Tillery*, the plaintiff made the argument that the 2014 amendment to Labor Code section 1102.5 adding the phrase "or any person acting on behalf of the employer" suggests there is individual liability. As explained in *Tillery*, Plaintiff's argument fails.

Specifically, the *Tillery* court found that the language added in the amendment is nearly identical to the language used to define "employer" in the FEHA. The California Supreme Court has already reviewed similar language in the context of employment lawsuits and found that no individual liability exists. The *Tillery* court, relied on the California Supreme Court's rulings in *Reno v. Baird*[2] and *Jones v. Lodge at Torrey Pines Partnership*[3]. In *Reno*, the California Supreme Court held that individuals could not be

---

[1] *But see Bachmann v. Bay Area Air Quality Management District* (Super. Ct. Contra Costa County, Jan. 18, 2018, Case No. MSC17-01243) (relying on federal court rulings finding no individual liability under Labor Code section 1102.5 following 2014 amendment). *See* Individual Defendant's Request for Judicial Notice, Exhibits A and B.
[2] 18 Cal. 4th 640 (1998).
[3] 42 Cal. 4th 1158 (2008).

liable for discrimination under the Fair Employment and Housing Act ("FEHA") even though the FEHA defines "employer" for purposes of discrimination under Gov. Code section 12926(d) to include "any person regularly employing five or more persons, **or any person acting as an agent of an employer**[.]" *See Reno*, 18 Cal. 4th at 645. This reasoning was applied in *Torrey Pines* to the use of the word "person" in Gov. Code section 12940(h) prohibiting retaliation. *Torrey Pines*, 42 Cal. 4th at 1162.

In *Tillery*, the court found that the 2014 amendment to Labor Code section 1102.5 was no different from the use of the word "person" in Gov. Code section 12940(h). *Tillery* stated the California Supreme Court rejected the same argument in *Torrey Pines*, and cites to the *Torrey Pines* reasoning that the "Legislature has adopted other ways to signal individual liability, such as the 'clear language' in Government Code section 12940(j)(3) 'imposing personal liability on all employees for their own harassing actions.'" *Tillery,* 2015 U.S. Dist. LEXIS 106845 at *25-26. Additionally, the legislative history to the 2014 amendment to Labor Code section 1102.5 provides no suggestion that the Legislature intended for individuals to be liable for an alleged violation of Labor Code section 1102.5.

Moreover, the analysis of the California Supreme Court's holding that only employers, and not individuals, can be held liable for claims of retaliation under the Fair Employment and Housing Act ("FEHA") is instructive. *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal. 4th 1158, 1173 ("the employer is liable for retaliation under [Gov. Code] section 12940, subdivision (h), but non-employer individuals are not personally liable for their role in that retaliation.") In *Torrey Pines*, the Court relied heavily on its prior analysis in *Reno v. Baird* (1998) 18 Cal. 4th 640 where it held that there was no individual liability for discrimination because "[t]he general language allowing the FEHC to issue an accusation against a 'person' does not mean that *all* the FEHA provisions apply to persons as well as employers." *Reno*, at 659 (emphasis in original); see *Torrey Pines,* at 1163-1167. It was found that "*Reno*'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation."

*Torrey Pines*, at 1164. The specific rationale is that individuals cannot avoid making personnel decisions on behalf of the employer, and "it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision." *Id.* at 1167.

The *Torrey Pines* Court also emphasized that when the Legislature intends for a statute to impose personal liability, it will plainly do so, as evident in Government Code section 12940(j) providing, "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section by this section that is perpetrated by the employee…." *Torrey Pines*, at 1162.  Here, the analysis is the same when determining whether there can be individual liability for an alleged violation of Labor Code section 1102.5. It is highly unlikely that the Legislature would create liability for an individual without any reference to individuals in the language of the statute. See *In re Christian S.* (1994) 7 Cal. 4th 768, 782 ("We are not persuaded the Legislature would have silently, or at best obscurely, decided so important and controversial a public policy matter and created a significant departure from the existing law.")

In addition to the above precedent and reasoning of California's highest court, the statutory scheme as a whole in Chapter 5 of the California Labor Code contains Labor Code section 1102.5.[4] Regardless of the 2014 amendment to Labor Code section 1102.5, the Legislature did not repeal, amend, or clarify Labor Code section 1104, which reads, in its entirety, "In all prosecutions under this chapter, **the employer is responsible for the acts of his managers, officers, agents, and employees.**" (emphasis added).

Thus, there can be no individual liability for a violation of Labor Code section 1102.5 because the California Legislature has provided no clear language or intent to allow for it. In fact, the Legislature *explicitly* provides within the same statutory scheme that only the employer can be liable for prosecution of such a claim.

Based on the foregoing, it is clear that Plaintiff has no cognizable claim against the Individual Defendant.

As demonstrated by Plaintiff's Complaint, Kieswetter is improperly joined as a

---

[4] Chapter 5 of the California Labor Code consists of sections 1100 – 1006.

sham and nominal defendant and therefore he should be disregarded for purposes of determining jurisdiction. *Morris v. Princess Cruises, Inc.,* 236 Fed. 1061, 1067 (9th Cir. 2001); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232-33 (9th Cir. 1986) (all defendants must join in removal except nominal, unknown or fraudulently joined parties.)

14. **The presence of Doe defendants has no bearing on the diversity with respect to removal.** *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

## THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED

15. This action also meets the amount in controversy requirement for removal based on diversity jurisdiction. 28 U.S.C. section 1332(a) authorizes the removal of cases in which there is diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

16. In determining whether the amount in controversy exceeds $75,000.00, the Court must presume Plaintiff will prevail on her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes "plaintiff prevails on liability") and *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Moreover, the argument and facts set forth herein appropriately may be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840, n.1 (9th Cir. 2002), citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

17. The amount in controversy may include general and special compensatory damages and attorneys' fees recoverable by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367, cert denied, 459 U.S. 945 (9th Cir. 1982) (attorneys' fees may be taken into account to

determine jurisdictional amount). The Court may examine the nature of the action and the relief sought, including attorneys' fees. *See, e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (attorneys' fees in individual employment discrimination cases often exceed damages). The Ninth Circuit has made clear that statutory attorneys' fees are included as a basis for determining the jurisdictional amount in controversy. *See Galt*, 142 F.3d at 1155-56. In determining whether the amount in controversy meets the jurisdictional minimum, attorneys' fees are calculable beyond the time of removal. *Simmons*, 209 F.Supp. at 1035.

18. Punitive damages also are included in calculating the amount in controversy. *See Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); see also *Aucina v. Amoco Oil Co.*, 871 F.Supp. 332, 334 (S.D. Iowa 1994) (nothing that "the purpose of punitive damages is to capture a defendant's attention and deter others from similar conduct" and the plaintiff's prayer for punitive damages "might alone" exceed the jurisdictional minimum); *White v. FCI USA, Inc.*, 319 F.3d 672, 674-76 (5th Cir. 2003) (finding it facially apparent that plaintiff's wrongful termination claim exceeded $75,000 based on her "lengthy list of compensatory and punitive damages," including loss of pay, fringe benefits, impaired earning capacity, emotional distress damages, combined with a claim for attorneys' fees).

19. Without admitting that Plaintiff could recover any damages, Defendant has a good faith belief that the amount in controversy in this action could exceed $75,000.00. Where, as here, a plaintiff's state court complaint is silent as to the amount of damages claimed, the removing defendant need establish only that it is more probable than not that the plaintiff's claims exceed the jurisdictional minimum. *Guglielmino v. McKee Foods, Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860-61 (9th Cir. 1996).

20. In addition, where a plaintiff's state court complaint does not specify the precise amount of damages claimed, the removing defendant need establish only that it is more probable than not that the plaintiff's claims exceed the jurisdictional minimum.

*Guglielmino v. McKee Foods, Corp.* (9th Cir. 2007) 506 F.3d 696, 699; *Sanchez v. Monumental Life Ins. Co.* (9th Cir. 1996) 95 F.3d 856, 860-61.

21. Here, the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, for the following reasons:

(a) Plaintiff seeks to recover "All medical expenses, actual, consequential, and incidental losses, including loss of income and benefits…together with prejudgment interest; general damages for emotional distress and mental suffering…civil penalties…attorney's fees…and exemplary and punitive damages…" [See Complaint, Prayer for Relief ¶¶ 1-6]. Plaintiff specifically claims she "has lost, and will continue to lose, income and benefits in an amount to be proven at the time of trial." [See Complaint ¶ 27]. Further, Plaintiff alleges she "was personally humiliated and has become mentally upset, distressed, and aggravated…[and] claims general damages for such mental distress and aggravation…" [*See* Complaint ¶ 28]. Plaintiff also alleges that she "was required to employ, and continues to employ, medical practitioners, physicians, and surgeons to examine, treat, and care for Plaintiff, and did, and continues to, incur medical and incidental expenses…" [*Id.* at ¶ 29]. Plaintiff seeks "punitive damages in an amount appropriate to punish and set an example of said Defendants." [*Id.* at ¶ 30] and seeks to recover "civil penalties up to the statutory maximum of $10,000 for each violation of Cal. Lab. Code § 1102.5(f) …and reasonable costs and attorney's fees. Considering alleged lost wages alone, Plaintiff was earning a salary of $65,000/year at the time of her termination. [*See* Mary Short Declaration, ¶7 and Exhs. D and E]. Assuming two years of front pay through trial, Plaintiff is seeking **at least $130,000.00** in lost earnings alone.

(b) As articulated above, Plaintiff seeks to recover for alleged emotional distress. Plaintiffs alleging emotional distress as a result of wrongful termination regularly seek ***in excess of $75,000.00*** in such damages. *Keiffer v. Bechtel Corp.,* 65 Cal.App.4th 893, 895 (1998) (California Court of Appeal upheld jury award in excess of $75,000.00 for emotional distress damages); *Silo v. CHW Medical Foundation,* 86

Cal.App.4th 947, 955 (2001) (jury award in excess of $75,000.00 in non-economic damages was upheld in wrongful termination lawsuit); *see also Egan v. Premier Scales & Sys.,* 237 F.Supp.2d 774, 776 (W.D. Ky. 2002) (where plaintiff sought damages for embarrassment, humiliation, and willful, malicious and outrageous conduct, the court held that the defendant could "easily make the case that the claims are more likely than not to reach the federal amount in controversy requirement").

(c) Plaintiff seeks to recover punitive and exemplary damages. [See Complaint, ¶ 30, Prayer for Relief ¶ 5.] Plaintiff's claims for punitive damages are part of the amount in controversy when determining diversity jurisdiction. *Gibson v. Chrysler Corp.,* 261 F.3d 927, 945 (9th Cir. 2001). California juries have returned verdicts with substantial punitive damage awards in employment discrimination actions. *Simmons* 209 F. Supp. 2d at 1033 ("the jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases"); *Aucina v. Amoco Oil Co.,* 871 F. Supp. 332, 334 (S.D. Iowa 1994) ("[b]ecause the purpose of punitive damages is to capture the defendant's attention and deter others from similar conduct, it is apparent that the plaintiff's claim for punitive damages alone might exceed [the jurisdictional amount]"). In *Aucina*, the defendant-employer established the amount in controversy exceeded the jurisdictional minimum where the former employee asserted claims for lost wages, lost benefits, mental anguish, and punitive damages. The court noted that the defendant was a Fortune 500 Company and that "[b]ecause the purpose of punitive damages is to capture a defendant's attention and deter others from similar conduct," the plaintiff's claim for punitive damages "might alone" exceed the jurisdictional minimum. *Id*. at 334. Thus, although Defendant vigorously denies Plaintiff's allegations and claims, if Plaintiff were to prevail on her claims and establish the requisite state of mind, the potential punitive damages award alone against Defendant could ***well exceed the $75,000 jurisdictional minimum***. Assuming conservatively that Plaintiff could recover punitive damages in a 1:1 ratio with two (2) years of alleged lost earnings [$65,000/year x

2 years] (by the time this matter goes to trial), **she would recover at least $130,000.00 in punitive damages**.

(d) Plaintiff also seeks to recover statutory attorneys' fees. [See Complaint ¶ 34, Prayer for Relief ¶ 4.] While Plaintiff seeks an unspecified amount of attorneys' fees, such fees may also be taken into account to determine jurisdictional amounts, if a statute authorizes fees to a successful litigant. *Goldberg v. C.P.C. International, Inc.,* 678 F.2d 1365, 1367 (9th Cir. 1982); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-1156 (9th Cir. 1998). *Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 700 (9th Cir. 2007) ("[w]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002). "Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy." *Brady v. Mercedes-Benz USA, Inc.* (N.D. Cal. 2002) 243 F. Supp 2d 1004, 1011; *Celestino v. Renal Advantage, Inc.* (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 33827, *11 ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal")

22. In sum, Plaintiff's potential recovery under the facts as alleged in his Complaint far exceeds the amount in controversy. It cannot be said to a legal certainty that Plaintiff would not be entitled to recover the jurisdictional amount. *See Anthony v. Security Pacific Financial Services, Inc*., 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankenship*, 20 F.3d 383, 386-87 (10th Cir. 1994). Therefore, the claims alleged and recovery requested in Plaintiff's Complaint demonstrate the amount in controversy in this case exceeds the requirements under 28 U.S.C. §1332(a).

## CONCLUSION

23. Based on the foregoing, Defendants remove this action to this Court pursuant to the provisions of 28 U.S.C. Sections 1332 and 1441, as this Court has diversity jurisdiction.

WHEREFORE, Defendant removes this action now pending in the Superior Court of the State of California for the County of Orange to this Court.

Dated: May 14, 2021            JACKSON LEWIS P.C.

_____
Leonora M. Schloss
John Andrew Schaffer

Attorneys for Defendant
MERIDIAN SENIOR LIVING, LLC and
KENNETH KIESWETTER

4821-2913-2520, v. 1