# EXHIBIT A

# CONTRA COSTA SUPERIOR COURT
MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

---

**1.  TIME:  9:00   CASE#: MSC11-00301**
**CASE NAME: STRANGE VS PEREZ**
**HEARING ON MOTION TO/FOR VACATE AND SET ASIDE ORDER RE: 5955 OLD**
**SCHOOL RD FILED BY CONTRA COSTA COUNTY TREASURER-TAX COLLECTOR**
***\* TENTATIVE RULING: \****

Granted. No opposition.

---

**2.  TIME:  9:00   CASE#: MSC11-02417**
**CASE NAME: CA FAIR PLAN ASSOC VS GARNES**
**HEARING ON MOTION TO/FOR ATTNY FEES FILED BY MARLENE GARNES**
***\* TENTATIVE RULING: \****

Continued to February 22, 2018 at 9:00 AM in Dept. 33.

---

**3.  TIME:  9:00   CASE#: MSC13-01778**
**CASE NAME: JAMES NICKOLOPOULOS vs DAVID M**
**HEARING ON MOTION TO/FOR ENTRY OF JUDGMENT FILED BY JAMES**
**NICKOLOPOULOS, EDGAR RIZKALLAH**
***\* TENTATIVE RULING: \****

Granted. No opposition.

---

**4.  TIME:  9:00   CASE#: MSC15-00024**
**CASE NAME: FRASER VS. WELLS FARGO**
**HEARING ON MOTION TO/FOR TO FILE DOCS UNDER SEAL FILED BY WELLS**
**FARGO BANK, NATIONAL ASSOCIATION, WELLS FARGO BANK, LTD.**
***\* TENTATIVE RULING: \****

Appear.

---

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

---

**5.  TIME:  9:00   CASE#: MSC15-00024**
**CASE NAME: FRASER VS. WELLS FARGO**
**HEARING ON MOTION FOR SUMMARY JUDGMENT OR IN ALTERN S/ADJ FILED**
**BY WELLS FARGO BANK, NATIONAL ASSOCIATION, WELLS FARGO BANK,**
***\* TENTATIVE RULING: \****

 Defendant Wells Fargo Bank, LTD's motion for Summary Judgment **is granted**. Plaintiff Colin Fraser does not dispute he was employed by Wells Fargo Bank, N.A. and not Wells Fargo Bank, LTD.  The claims asserted in Plaintiff Fraser's complaint arose from his employment with Well Fargo Bank, N.A.  Thus, the motion is granted as to Wells Fargo, LTD.

 Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment **is granted** for the following reasons.

<u>Background Facts</u>

 Plaintiff Colin Fraser is a 52-year-old Caucasian male. Plaintiff began working for Wells Fargo in September of 2003. In April 2007, Plaintiff became licensed as a Personal Banker and transferred to the Blackhawk branch effective September 30, 2007.  He remained a "Personal Banker 2" until his discharge on May 24, 2012 for violation of Wells Fargo's Code of Ethics.

 Plaintiff alleges his wife suffers from continual, debilitating and disabling back and spinal pain. On or about May 10, 2012, Plaintiff submitted a written family member leave request to be placed on immediate family leave from May 1, 2012 through January 1, 2013, for full-time care of his wife and children.  On May 18, 2012, Plaintiff was subjected to interrogation for violation of Wells Fargo's Code of Ethics and Business Conduct. Plaintiff, an at-will employee was terminated on May 24, 2012, for violating the Code of Ethics.

 Back on April 17, 2012, Wells Fargo had conducted an internal sales quality audit. It revealed Plaintiff had opened four college checking accounts for minors under the age of thirteen, who were not enrolled in college.  Plaintiff's case was referred to Corporate Investigations, which Defendant maintains led to his termination.

 Plaintiff alleges the trumped-investigation was a direct retaliation for his proper exercise of rights under the California Family Rights Act.  Moreover, Plaintiff alleges Wells Fargo discriminated against Caucasian employees such as Plaintiff in favor of employing non-Caucasian employees, including by not limited to employees from India or bearing that ethnic lineage.

 On or about January 14, 2013, Plaintiff filed a charge of discrimination with the California Dept. of Fair Employment and Housing, based on racial discrimination.  On or after January 8, 2014, Plaintiff received a Notice of Right to Sue.  Plaintiff filed this action alleging four causes of action—Violation of the California Family Rights Act, Wrongful termination in Violation of Public Policy, Racial Discrimination, and Retaliation.

 Defendant also moves for summary judgment on the ground the First, Third and Fourth causes of action are time-barred.  Defendant also moves for summary adjudication of the claim

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

for punitive damages on the ground there is no evidence that a Wells Fargo officer, director, or managing agent engaged in malicious, oppressive, or fraudulent conduct toward Plaintiff or ratified the same.

**Issue One: Discrimination and Retaliation Claims**

Defendant's motion for summary adjudication of Plaintiff's First Cause of Action (Violation of California Family Rights Act), Second Cause of Action (Wrongful termination in Violation of Public Policy), Third Cause of Action (Racial Discrimination), and Fourth Cause of Action (Retaliation) is granted for the following reasons.

Defendant moves for summary adjudication on the ground all of these causes of action fail as Plaintiff has no evidence to show Wells Fargo's legitimate reason for termination of Plaintiff's employment was pretext for discrimination or retaliation. Plaintiff was terminated based on upon Wells Fargo's investigation and Plaintiff's admitted falsification of records. Wells Fargo argues it has demonstrated a legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's discharge. Plaintiff lacks specific, substantial evidence that Wells Fargo's proffered reason for his discharge was a pretext for intentional discrimination or retaliation.

Standard of Review

Because of the similarity between state and federal employment discrimination laws, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination.  *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354.)   "Under the three-part test developed in *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. 792: '(1) The complainant must establish a prima facie case of discrimination; (2) the employer must offer a legitimate reason for his actions; (3) the complainant must prove that this reason was a pretext to mask an illegal motive.' [Citation]" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.)

On defendant's motion for summary judgment, "like all other defendants, the employer who seeks to resolve the matter by summary judgment must bear the initial burden of showing the action has no merit. [Citation]." (*Slatkin v. Univ. of Redlands* (2001) 88 Cal.App.4th 1147, 1156, quoting *Le Bourgeois v. Fireplace Manufacturers, Inc., supra,* 68 Cal. App. 4th at p. 1058.) "A defendant employer's motion for summary judgment slightly modifies the order of these [*McDonnell Douglas*] showings. If, as here, the motion for summary judgment relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1005.)

Plaintiff Fraser alleges his termination was in violation of California statutory prohibition on race discrimination and retaliation. As such, the termination violated public policy.  The ultimate issue is whether the employer acted with a motive to discriminate illegally.   "'The central issue is and should remain whether the evidence as a whole supports a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus.'" (*McGrory v.*

# CONTRA COSTA SUPERIOR COURT
MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

*Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1524.  An employer need not have good cause to terminate an at-will employee. "The reason for termination need not be wise or correct so long as it is not grounded on a prohibited bias. [Citation.]" (*Ibid.*)

Defendants' Initial Burden of Production

Wells Fargo, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of the plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory reason. (Code Civ. Proc., § 437c(p); *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.)  "The employer's burden at this stage is to go forward with additional evidence; it does not take on a burden of persuasion." (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.)

Wells Fargo satisfies its burden, as the moving party, if it presents evidence of the nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination. (See *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098.) Proving the absence of discriminatory motive is not Wells Fargo's burden initially. For "if employers were required to prove the absence of discriminatory motive, the third stage of the *McDonnell Douglas* analysis would be superfluous." (*Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 664, internal quotations omitted.)

Here, Wells Fargo presented the following evidence of its nondiscriminatory motive in terminating Plaintiff.  Wells Fargo's Team Member Handbook includes a Code of Ethics and Plaintiff understood that he was to abide by the Code.  (Undisputed Material Fact ("UMF") Nos. 7-9, and corresponding evidence.   Hereinafter, reference to the undisputed material fact includes the evidence cited in support of the fact.) The Code prohibited team members from falsifying records.  (UMF No. 10.)  Wells Fargo asserts Plaintiff violated the Code of Ethics by falsifying bank records for the college accounts he opened for minors, who were not enrolled in college, but attended either middle or high school. (See below.)

Wells Fargo offers college checking accounts for customers twenty-four years of age or younger who are college students.  (UMF No. 11.)  Prior to opening a college checking account, the banker is required to verify a college identification or proof of college enrollment.  (UMF No. 12.)  On April 17, 2012, Mr. Steven Herfindahl, a Sales Quality Analyst in Omaha, Nebraska, conducted an internal sales quality audit analyzing college checking accounts opened between January 01, 2012 and March 31, 2012, for customers under the age of thirteen.  (UMF No. 15.)  The audit revealed that Plaintiff had opened college checking accounts for four minors under the age of thirteen during the 3-month audit period. (UMF No. 17.)   Plaintiff was the only individual in the 99.99th percentile across the entire company, which was the standard for deciding who would be investigated following the audit.  (UMF No. 18.)  Mr. Herfindahl had never met Plaintiff and was unaware of Plaintiff's race or that Plaintiff had ever taken or requested a leave of absence.  (UMF No. 16.)

Herfindahl sent the results to his supervisor, Mr. Glen Najvar in San Antonio, Texas. (UMF No. 19.)   Mr. Najvar referred Plaintiff to Corporate Investigations for further review due to

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

the appearance of falsifying bank records. (UMF No. 20.)  Mr. Najvar was unaware of Plaintiff's race or the he had ever taken a requested leave of absence.  (UMF No. 19.)

On May 19, 2012, Investigator Joniann Hookfin interviewed Plaintiff.  (UMF No. 21.) Ms. Hookfin questioned Plaintiff on the four accounts opened for the ineligible children.  (UMF No. 22.)  During his interview, Plaintiff admitted that he falsified records to open the college checking account. (UMF No.24.)  After meeting with Ms. Hookfin, Plaintiff was placed on administrative leave. (UMF No. 26.)  While on leave, Plaintiff sent an email to Wells Fargo on May 24, 2012, asserting retaliation in connection with future medical leave of absence he intended to take. (UMF No. 27.)

After considering the investigation, Wells Fargo terminated Plaintiff on May 24, 2012, for entering false information and opening a college checking account with false information in violation of Wells Fargo's Code of Ethics. (UMF No. 29.)

As to the issue of retaliation based on the medical leave request, on May 11, 2012, Plaintiff inquired with Human Resources about a potential leave of absence at an unspecified future date.  (Plaintiff's wife surgery had not been set yet.) (UMF No. 41.)   Plaintiff contends he showed a Family Member Leave Request form to his manager, Mr. Nick Gould, and that Mr. Gould refused to sign the form. Wells Fargo does not require that manager grant approval in order for a team member to submit a leave request or take a leave of absence. (UMF No. 34.) Wells Fargo never denied Plaintiff's leave request because Plaintiff never submitted the forms. (UMF No. 43.) During his employment, Plaintiff took two leave of absences.  (UMF No. 36.)

Based upon his interaction with Mr. Gould, concerning a future leave of absence, Plaintiff speculates that the termination of his employment was retaliation for his inquiry about a leave. However, the Sales Quality Audit was commenced by Mr. Herfindahl on or about April 17, 2012, prior to Plaintiff's leave inquiry.  Plaintiff speculates that his termination was motivated by race discrimination because a female of Indian descent was hired into his position after his termination.

The April 2012 internal sales quality audit was conducted in Omaha, Nebraska, by Mr. Herfindahl.  (UMF No. 15.)  Mr. Herfindahl had never met or spoken to Plaintiff.  He was unaware of Plaintiff's race or that he had ever taken or a requested leave of absence. (UMF No. 16.)  Plaintiff was the only employee, across Wells Fargo nationwide enterprise, to open four college checking accounts for children under the age of thirteen. (UMF Nos. 17-18.) Mr. Herfindahl reported the audit results to Mr. Najvar, his supervisor in San Antonio, Texas, who escalated the case to Corporate Investigations.  (UMF No. 19.) Mr. Najvar was not aware of Plaintiff's race or any leave taken by Plaintiff. (UMF No. 19.)  No other team member was similarly situated.  Moreover, Plaintiff conceded in his interview with Ms. Hookfin, Wells Fargo's investigator that he had falsified the bank records.  (UMF No. 24.) Wells Fargo terminated Plaintiff's employment on May 24, 2012 for falsifying bank records in violation of the Code of Ethics.  (UMF No. 29.)

Plaintiff has no evidence the decision makers involved his termination—Ms. Hookfin, who recommended termination; Ms. Talcott, who consulted on the termination, and Mr. Vaid,

- 5 -

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

termination decision maker—had knowledge of other employees in the 99.99th percentile and treated them more favorably. (UMF No. 31.)

Next, the fact that Plaintiff discussed a future family leave for his wife's back surgery with is manager in July 2012 is insufficient to raise a triable issue of fact as to pretext.  Wells Fargo identified Plaintiff as the sole outlier on or about April 17, 2012, by a person who had no knowledge of Plaintiff's future leave.  Temporal proximity between Plaintiff's termination and discussion of leave are coincidental.  The employer's nondiscriminatory true reasons need not necessarily have been wise or correct. "While the objective soundness of an employer's proffered reasons supports their credibility…, the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally.*  Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination.*' [Citation.]"  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.)

 "If the employer produces substantial evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of discrimination created by the *prima facie* case " 'simply drops out of the picture' [Citations] and the burden shifts back to the employee to prove intentional discrimination." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1005.)  "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.'"  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.)

Plaintiff's Burden to Submit Evidence of Discriminatory or Retaliatory Motive

Defendant's motion for summary adjudication does not focus on whether Plaintiff can establish a *prima facie* case of discrimination and retaliation and the court finds Plaintiff presented evidence of the prima facie case for both discrimination and retaliation.  "This initial burden is not meant to be an "onerous" one, but is designed merely 'to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled.' [Citation.]" (*Horne v. District Council 16 Internat. Union of Painters & Allied Trades* (2015) 234 Cal.App.4th 524, 533.)

To defeat a motion for summary judgment, Plaintiff Colin Fraser must come forth with substantial responsive evidence that Wells Fargo's proffered reason for his termination is pretext for unlawful discrimination or retaliation.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355-356.)  To avoid summary judgment, Plaintiff must offer specific, substantial responsive evidence demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of Wells Fargo. (See *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 862.)  "For this purpose, speculation cannot be regarded as substantial responsive evidence." (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735.  "There must be evidence supporting a rational inference that *intentional discrimination,*

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT: 33
HEARING DATE: 01/18/18

*on grounds prohibited by the statute, was the true cause* of the employer's actions. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 361.)

> The employee must do more than raise an issue whether the employer's action was unfair, unsound, wrong or mistaken, because the overriding issue is whether discriminatory animus motivated the employer. [Citation.] '[T]he [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for … [the asserted] non-discriminatory reasons.'

(*Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 755.)

"[T]he plaintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' [Citation.]" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.) "Circumstantial evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate' on an improper basis. [Citation.] With direct evidence of pretext, 'a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial.' [Citation.]" (*Ibid.*)

### *Plaintiff's Direct Evidence of Discrimination*

Plaintiff also asserts he was discriminated against on account of his race for years by Vaid, who hired person of Indian descent to prevent Plaintiff from being promoted. (Plaintiff's Additional Material Fact ("PAMF") Nos. 98-102.)  Although Plaintiff's Memo of P & A, lists all of these additional facts in support of the claim of discrimination, only fact Nos. 101 and 102 relate discrimination.  Plaintiff evidence consist of Plaintiff's deposition testimony, where he testified that Ashoo did not respond to his request to be interviewed for a private banker position (Glaser Depo., 102:3-18); and the fact that he was replaced by someone of Indian descent.  (Glaser Depo., 104:23-105:17.) Plaintiff has not presented substantial evidence to raise a triable issue of fact that Wells Fargo's reason for termination was pretext for discrimination.

Plaintiff also argues that the "survey" was manipulated so as to identify Plaintiff as the "outlier."  Wells Fargo's survey was supposed to cover three months, but Defendant only reported two months, omitting March 2012. Plaintiff argues this is direct evidence of discrimination. (PAMF No. 76.) Plaintiff is mistaken. This is not direct evidence of discrimination or retaliation.  "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67, internal quotation omitted.)

Secondly, Wells Fargo produced the data for the month of March 2012. Plaintiff was the only person in the 99.99th percentile.  Defendant also argues that the data from March 2012 was not available to the decisionmakers at the time of Plaintiff's termination.  (Def. Response to

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

Plaintiff's Additional Material Fact ("PAMF") No.76.)  So, this later-discovered evidence cannot support Plaintiff's claim.  (See *Braithwaite v. Timken Co.* (6th Cir. 2001) 258 F.3d 488, 494.)

*Plaintiff's Evidence of Pretext*

Plaintiff argues there is an abundance of evidence that his termination was in retaliation for his intentions to take an extended family leave later in 2012.  Plaintiff contends Wells Fargo's audit or survey of college account openings was a pretext for his firing.  Defendant targeted for Plaintiff for termination.  The audit was conducted the same day that he returned to work following his wife's surgery. (PAMF No. 70.) Plaintiff's evidence (Najvar's and Herfindahl's Declarations) only shows the audit was designed in early April.  There is no evidence the audit was initiated on Plaintiff's return to work on April 17th.  Glen Najvar, the Project Management Manager for Wells Fargo's Compliance and Risk, asked Steve Herfindahl to initiate the audit leading to Plaintiff's firing.  Plaintiff contends there was no coincidence in the selection of the criteria for the audit—customers under the age of 13 over a three-month period.   (PAMF No. 73.)  Plaintiff's evidence does not raise a question of fact as to whether criteria was "tailored" to ensnare him.

Plaintiff points to Najvar's admission that audit did not come to him through the typical ways—the "Hotline" or in connection with a "proactive audit" as evidence of pretext.  Najvar claims he has no memory of the identity of the person requesting him to initiate the survey or audit.  (PAMF No. 68.)  Plaintiff claims the evidence is clear that Plaintiff's branch manager (Gould) and district manager (Vaid), not the Sales Quality Manager, instigated the investigation. (PAMF Nos. 66-69, 74.)  Plaintiff has no evidence that that initiation of the audit originated with Gould or Vaid.  Plaintiff speculates that based on Najvar's lack of memory, his branch must have initiated the audit.  Speculation is not sufficient to raise a triable issue of fact.

Plaintiff asserts Wells Fargo redacted the documents in attempt to conceal who initiated the survey. (PAMF No.74.)  Defendant has produced evidence that the documents were redacted to comply with federal law and pursuant to court order submitted unredacted copies. (Def. Response to PAMF No. 74.)

Plaintiff argues the "survey," was tailored made to identify Plaintiff as the "outlier" and was a sham.  The results of the survey were manipulated to show only violations in January and February, the two months in which plaintiff opened accounts. (PAMF Nos. 71-72, 75-76)  Following Plaintiff's motion to compel, discovery shows multiple employees in California opened college checking accounts for minors during the month March 2012 that were excluded.  Wells Fargo has no explanation for this anomaly. (PAMF No. 77.)  Other discovery revealed there were six hits in the month of March 2012.  (PAMF Nos. 76-77.)  Plaintiff argues the deliberate manipulation of data reveals consciousness of guilt precluding summary judgment.  Twenty-seven employees, including Plaintiff, were found to have opened college checking accounts for minors. Wells Fargo failed to discipline the other 26 employees. (PAMF No. 79-80.)  They were treated more favorably than Plaintiff.

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

Defendant points out that although the data identified 27 other individuals opening accounts, only Plaintiff opened 4 accounts meeting the criteria from the nationwide audit. (Def. Response to PAMF No.75.)

Plaintiff asserts that his opening of the accounts was approved by his manager. Nick Gould, Blackhawk's branch manager and Derrick Macadangdang, the assistant branch manager, were responsible for approval of each bank account. (PAMF No.83.) Wells Fargo did not investigate why the accounts were approved in the first place.  (PAMF Nos. 83 and 84.) Defendant points out there is no testimony that management audited each college account on a granular level to verify that the account opener was a college student.  Vaid testified that management review accounts to make sure they were funded, not that information was correct.

Plaintiff argues pretext can be shown through the inconsistent application of policies. Defendant's claim that Plaintiff's conduct violated the Code of Ethics, Plaintiff argues the Code of Ethics was not enforced.  The actual policy promoted by Wells Fargo allowed its employees to open college checking accounts for customers not enrolled in college and to falsify information concerning the mane of the college and graduation date.  (PAMF Nos. 87-89.) (Plaintiff cites to his declaration and portions of his deposition.)  However, Plaintiff has not produced evidence where a discriminatory animus may be inferred by the disparate application of policies.

*Conclusion on Issue One*

Defendant's motion for summary adjudication of the First C/A (Violation of California Family Rights Act), Second C/A (Wrongful termination in Violation of Public Policy), Third C/A (Racial Discrimination), and Fourth C/A (Retaliation) is granted.

Plaintiff failed to produce substantial responsive evidence demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of Wells Fargo. Plaintiff failed to demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Wells Fargo proffered legitimate reasons for Plaintiff's termination that a reasonable factfinder *could* rationally find them "unworthy of credence." Hence, there is no basis to infer Wells Fargo acted for discriminatory or retaliatory reasons.

**Issue Two:  FEHA Allegations are Time-barred.**

Defendant's motion for summary adjudication of discrimination claims from 2010 on the ground the claims are time-barred **is denied.**

Wells Fargo moves for summary adjudication of the Plaintiff's claim stemming from the 2010 incident where Mr. Vaid did not consider him for a personal banker position. (UMF No. 46.) Plaintiff filed a complaint with DFEH on January 14, 2013.  (UMF NO. 45.) It is a statutory requirement that before a plaintiff may assert a claim for relief, he must first file a complaint with the Dept. of Fair Employment and Housing within one year of the most recent alleged unlawful conduct.  Gov. Code § 12960(b), (d).  This is jurisdictional. (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724.)

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

However, Plaintiff argued the "continuing violation doctrine" is applicable when an employee raises a claim on conduct that is partly outside the statute of limitations. (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 813-817.)  The claims before January 17, 2012 reveal Vaid's motive, bias, and intent to terminate Plaintiff.

It is a question of fact as to whether the continuing doctrine applies, but the motion for summary adjudication is this cause of action is granted on other grounds.

**Issue Three: Wrongful Termination Duplicative and No Support for Punitive Damages**

Defendant moves for summary adjudication of the wrongful termination claim on the ground it is derivative of the discrimination and retaliation claims.  The claim fails as it is duplicative of the statutory claims.  (See *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 24.)  The motion for summary adjudication is granted.

As to punitive damages, Defendant moves for summary adjudication on the ground Plaintiff failed to allege conduct justifying punitive damages. The finding of unlawful discrimination or retaliation would not itself justify punitive damages.  Such conduct is not equivalent to malice or oppression. (See *Ackerman v. Western Electric Co.* (N.D.Cal. 1986) 643 F.Supp. 836, 857.) Plaintiff has presented no clear and convincing evidence that anyone at Wells Fargo engaged in acts of oppression, fraud or malice.

Plaintiff's Objection to Evidence
    Plaintiff makes the following objections:
1. Declaration of Vaid, Objection No. 1—Overruled.
2. Declaration of Vaid, Objection No. Objection No. 2—Sustained in part.  Sustained as to "Based upon Hookfin's email…."  Lack of personal knowledge; Sustained as to "Based upon her investigation…" Lack of personal knowledge.
3. Declaration of Vaid, Objection No. 3—Overruled.  Declarant's state of mind.
4. Declaration of Vaid, Objection No. 4—Overruled.
5. Declaration of Hookfin, Objection No. 5—Overruled.
6. Declaration of Hookfin, Objection No. 6—Overruled.
7. Declaration of Hookfin, Objection No. 7—Overruled.
8. Declaration of Najvar, Objection No. 8—Overruled.
9. Declaration of Najvar, Objection No. 9—Sustained. Lack of foundation.
10. Declaration of Najvar, Objection No. 10--Overruled
11. Declaration of Najvar, Objection No. 11—Sustained in part.  Sustained as to last sentence, "Specifically, it is unlikely…."  Lack of personal knowledge and lack of foundation.
12. Declaration of Harline, Objection No. 12—Overruled.
13. Declaration of Harline, Objection No. 13—Overruled.
14. Declaration of Talcott, Objection No. 14--Overruled
15. Declaration of Talcott, Objection No. 15—Overruled.
16. Declaration of Talcott, Objection No. 16—Sustained in part.  Sustained as to sentence beginning, "Mr. Vaid also informed me that he…" Hearsay, Lack of personal knowledge.

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

17. Declaration of Talcott, Objection No. 17—Sustained in part.  Sustained as to sentence beginning, Mr. Gould stated…" Hearsay.
18. Declaration of Talcott, Objection No. 18—Overruled.
19. Declaration of Talcott, Objection No. 19—Overruled.
20. Declaration of Gould, Objection No. 20. Overruled.


Defendant's Objection to Evidence
Defendant objects to the following:
1.  Declaration of Colin Fraser, No.1—Overruled.
2.  Declaration of Colin Fraser, No. 2—Overruled.
3.  Declaration of Colin Fraser, No. 3—Overruled.
4.  Declaration of Colin Fraser, No. 4—Overruled.
5.  Declaration of Colin Fraser, No. 5—Overruled.
6.  Declaration of Colin Fraser, No.6—Sustained in part.  Hearsay.
7.  Declaration of Colin Fraser, No.7—Overruled.
8.  Declaration of Colin Fraser, No.8—Sustained. Hearsay.
9.  Declaration of Colin Fraser, No. 9—Sustained in part. "Vaid told…" Hearsay.
10. Declaration of Colin Fraser, No. 10—Sustained. Lack of foundation.
11. Declaration of Colin Fraser, No. 11—Sustained in part.  Speculation.
12. Declaration of Colin Fraser, No. 12—Sustained in part. Hearsay, speculation.
13. Declaration of Colin Fraser, No. 13—Sustained.  Lack of foundation.
14. Declaration of Colin Fraser, No. 14—Sustained.  Hearsay and Speculation.
15. Declaration of Colin Fraser, No. 15—Overruled. Contradiction goes to weight and credibility.
16. Declaration of Colin Fraser, No. 16—Sustained.  Lack of foundation.
17. Declaration of Colin Fraser, No. 17—Sustained.  Legal conclusion.
18. Declaration of Colin Fraser, No. 18.  Sustained.  Opinion and lack of foundation.
19. Declaration of Colin Fraser, No. 19—Sustained.  Opinion and lack of foundation.
20. Declaration of Colleen MacDonnell, No. 20—Overruled. Not submitted for truth of matter asserted in hearsay statement.
21. Declaration of Colleen MacDonnell, No. 21—Overruled. Not submitted for truth of matter asserted in hearsay statement.
22. Declaration of Colleen MacDonnell, No. 22—Overruled. Not submitted for truth of matter asserted in hearsay statement.
23. Declaration of Colleen MacDonnell, No. 23—Overruled. Not submitted for truth of matter asserted in hearsay statement.
24. Declaration of Colleen MacDonnell, No. 24—Overruled.
25. Declaration of Colleen MacDonnell, No. 25—Overruled.
26. Declaration of Colleen MacDonnell, No.26—Overruled.
27. Declaration of Stephen Fuerch, No. 27—Overruled.
28. Declaration of Stephen Fuerch, No. 28—Overruled.
29. Declaration of Stephen Fuerch, No. 29—Overruled.

# CONTRA COSTA SUPERIOR COURT
## MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

---

**6.  TIME:  9:00  CASE#: MSC15-00024**
**CASE NAME: FRASER VS. WELLS FARGO**
**FURTHER CASE MANAGEMENT CONFERENCE**
***\* TENTATIVE RULING: \****

 Appear.

---

**7.  TIME:  9:00  CASE#: MSC15-01493**
**CASE NAME: BARRA VS. ENGEO**
**HEARING ON MOTION TO/FOR FURTHER AWARD OF POST-JDGMNT ATTNY FEES**
**FILED BY ENGEO, INC**
***\* TENTATIVE RULING: \****

Denied. The subject action did not involve "enforcing a judgment" as required to qualify for an award of fees pursuant to CCP Section 685.040. The gravamen of the complaint was an action by the judgment debtor to recover damages claimed to have occurred as a result of improper or irregular levying practices pursuant to CCP Sections  701.560 and 701.680. Moreover, the judgment was fully satisfied 2 months prior to the initiation of this litigation. CCP Section 685.080 only allows for an award of fees if the motion seeking fees is brought before the judgment is fully satisfied.

---

**8.  TIME:  9:00  CASE#: MSC15-01683**
**CASE NAME: FREEMAN VS PALO ALTO MEDICAL F**
**HEARING ON MOTION FOR SUMMARY JUDGMENT FILED BY JOHN MUIR HEALTH**
***\* TENTATIVE RULING: \****

        The motion for summary judgment filed by defendant John Muir Health is denied.  A triable issue of fact exists whether defendant was negligent through the actions of the nurse who gave plaintiff Lisinopril on June 25, 2014 at 3:32 p.m. and failed to make further inquiry regarding allergies to medications after plaintiff asked whether she was allergic to the new hypertension medication defendant was giving her and through failing to inform plaintiff's daughter of a change in hypertension medications.  (Disputed Material Fact No. 14; Plaintiff's Additional Fact Nos. 2, 5, 6, 7, 9, 14, 15, 16, 17, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 35, 36, 37; Ewings Decl., ¶ 4, 5, 6, 7, 8; Spitzer Decl., ¶ 24 a., b.; Ex. 1 to Tashroudian Decl., Freeman Depo. at 36:2-7; 45:2-11; 46:9-48:2; 47:11-24; 68:12-18; 69:15-70:3; 70:10-71:12; 144:11-20; 152:2-22; 154:1-155:6; 158:24-159:17; 160:11-24; 162:12-17; 162:23-25; 174:12-16; Ex. 4 to Tashroudian Decl., Records of Palo Alto Medical Foundation, p. 29, stating "allergic to Lisinopril.")  In ruling on a motion for summary judgment the court liberally construes the declarations of the plaintiff's experts and resolve any doubts as to the propriety of granting the

# CONTRA COSTA SUPERIOR COURT
## MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

motion in favor of the plaintiff.  (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125-126; *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606.)

### Rulings on Evidentiary Objections

1 – Overruled.  An objection must be specific, stating the exact words that are objected to or it will be overruled as too general.  (*People v. Harris* (1978) 85 Cal.App.3d 954, 957.)  Further, the vast majority of paragraph 24 of the declaration criticizes the conduct of nurses, not of a doctor for prescribing Lisinopril.

2 – Overruled.

3 – Overruled.

4 – Sustained (relevance).  There is no independent evidence, or evidence contained within the declaration itself, that this delay in treatment caused any significant damages.

5 – Sustained.  See no. 4.

---

**9.  TIME:  9:00   CASE#: MSC16-02268**
**CASE NAME: CASH VS. AQUATECH POOL SYSTEMS**
**HEARING ON MOTION TO/FOR AN ORDER APPROVING A PAGA SETTLEMENT**
**FILED BY CHRISTOPHER  CASH, AQUATECH POOL SYSTEMS CORPORATION,**
***\* TENTATIVE RULING: \****

The Court approves the settlement subject to the following conditions.

The Court has closely reviewed Plaintiff's attorneys' declarations and the materials attached.  In his declaration, Mr. Diachenko seems to suggest Court has no authority to review his fees.  The Court disagrees.  Labor Code Section 2699 subdivision (l)(2) provides that "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to [PAGA]." The fees sought are part of such a settlement; accordingly, the Court has authority to review and approve the fees sought.

Mr. Diachenko is asking for $26,000 in fees and costs of the $52,500 total Defendants agreed to pay.  The Court finds nothing in the record to warrant nearly half of the settlement going to Plaintiff's counsel.  Accordingly, the Court approves the total settlement amount with the modification that Plaintiff's counsel recover all of his costs ($1,000) and one third of the settlement amount minus costs ($16,995) in fees.  The remaining amount shall be allocated to Cash, the LWDA, and other aggrieved employees on a pro rata basis, according to the percentage of funds they were to receive in the original settlement agreement.

The approved breakdown of the $52,500 settlement is as follows:

- $17,995 for attorneys' fees and costs
- $20,703 for Cash's individual claims, included wages and non-PAGA penalties.

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

- $13,802 for all PAGA claims for all aggrieved employees, 75% of which shall be sent to the LDWA.

An appropriate order shall be prepared in compliance with California Rule of Court, Rule 3.1312 and Local Rule 3.54(a).

---

**10.  TIME:  9:00   CASE#: MSC17-00858**
**CASE NAME: CAVENDER VS. WELLS FARGO**
**HEARING ON MOTION TO/FOR JUDGMENT ON THE PLEADINGS FILED BY**
**WELLS FARGO BANK, N.A.**
*** TENTATIVE RULING: ***

Before the Court is a Motion for Judgment on the Pleadings ("MJOP") filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"). The MJOP relates to the Complaint filed by Mark A. Cavender and Pamela J. Cavendar (collectively, "Plaintiffs"). The Complaint pleads causes of action for (1) declaratory relief; (2) violation of Civil Code § 2923.6: dual tracking; (3) wrongful foreclosure; (4) promissory estoppel; (5) promissory fraud; (6) intentional misrepresentation; (7) negligent misrepresentation; (8) negligence & negligence per se; (9) violations of Civil Code § 1788 *et seq.*: The Rosenthal Fair Debt Collection Practices Act; and (19) violations of Business & Professions Code § 17200, *et seq.*: Fraudulent, Unlawful, and Unfair Business Practices.

As a threshold issue, Wells Fargo argues for the first time on Reply that Plaintiffs' causes of action based on purported violations of Civil Code section 2923.6 cannot proceed because the Legislature repealed the statutory prohibitions on dual tracking. Defendants rely on *Rankin v. Longs Drug Stores California, Inc.* (2009) 169 Cal.App.4th 1246, 1256 ("When a pending action seeks recovery based on a statutorily-based obligation, and that statutory provision is repealed by legislation not containing an express saving clause, the California courts have consistently concluded the pending actions should be abated.")

The *Rankin* court reasoned that:

> Although the courts normally construe statutes to operate prospectively, the courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, a repeal of such a statute without a saving clause will terminate all pending actions based thereon. In other words, where the Legislature has conferred a remedy and withdraws it by amendment or repeal of the remedial statute, the new statutory scheme may be applied to pending actions without triggering retrospectivity concerns.

*Id.* (internal citations and quotations omitted omitted).

The Court requests additional briefing on the issue of whether Plaintiffs' claim under 2923.6 has been abated. Specifically, the Court would like the parties to address (1) whether HBOR is a

- 14 -

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

remedial or substantive statute and (2) whether Plaintiffs' rights have vested under the previous section 2923.6.

Plaintiffs are to file a supplemental brief of no more than ten pages by February 1, 2018. Defendants may file a responsive brief of no more than ten pages by February 8, 2018. New hearing date is set for February 15, 2018 at 9:00 AM in Dept. 33.

---

**11.  TIME:  9:00   CASE#: MSC17-00858**
**CASE NAME: CAVENDER VS. WELLS FARGO**
**FURTHER CASE MANAGEMENT CONFERENCE**
***\* TENTATIVE RULING: \****

Continued to February 15, 2018 at 9:00 AM in Dept. 33.

---

**12.  TIME:  9:00   CASE#: MSC17-01243**
**CASE NAME: BAODING TIANWEI GROUP VS. NI**
**HEARING ON MOTION TO/FOR EXPUNGE LIS PENDENS RE: 3 BROOKTREE DRIVE FILED BY JERRY NI, LAI ZHEN LIU, DIANA NI, BO MING LIN**
***\* TENTATIVE RULING: \****

Continued to February 1, 2018 at 9:00 AM in Dept. 33.

---

**13.  TIME:  9:00   CASE#: MSC17-01243**
**CASE NAME: BAODING TIANWEI GROUP VS. NI**
**HEARING ON MOTION TO/FOR EXPUNGE LIS PENDENS RE: 3450 QUAIL WALK COURT FILED BY JERRY NI, LAI ZHEN LIU, DIANA NI, BO MING LIN**
***\* TENTATIVE RULING: \****

Continued to February 1, 2018 at 9:00 AM in Dept. 33.

# CONTRA COSTA SUPERIOR COURT
## MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

---

**14.  TIME:  9:00   CASE#: MSC17-01243**
**CASE NAME: BAODING TIANWEI GROUP VS. NI**
**FURTHER CASE MANAGEMENT CONFERENCE**
*** TENTATIVE RULING: ***

Continued to February 1, 2018 at 9:00 AM in Dept. 33.

---

**15.  TIME:  9:00   CASE#: MSC17-01565**
**CASE NAME: BACHMANN VS. BAY AREA AIR**
**HEARING ON DEMURRER TO 1st Amended COMPLAINT of BACHMANN FILED**
**BY BAY AREA AIR QUALITY MANAGEMENT DISTRICT, WAYNE KINO, BILL**
*** TENTATIVE RULING: ***

Defendants' demurrer to the Complaint is <u>overruled as to the Bay Area Air Quality Management District and sustained without leave to amend as to defendants Wayne Kino, Brian Binger, Bill Guy, Satnam Hundel, Rex Sanders, Jeffrey McKay and Jack Broadbent</u>.

Plaintiffs Michael Bachmann and Sarah Steele (collectively "Plaintiffs") have sued the Bay Area Air Quality Management District (the "District") and several individuals: Wayne Kino, Brian Binger, Bill Guy, Satnam Hundel, Rex Sanders, Jeffrey McKay and Jack Broadbent (collectively the "Individual Defendants"). Plaintiffs' First Amended Complaint (FAC) includes a single cause of action against all defendants for violations of Labor Code §1102.5 (all statutory references are to the Labor Code unless otherwise noted). Plaintiffs allege that they identified and reported multiple acts of documents being destroyed or deleted in violation of state law and were later terminated for this conduct.

*Individual Defendants*

The Individual Defendants demurrer to the FAC for the failure to state a claim, arguing that section 1102.5 does not permit claims against individual defendants. This Court agrees.

Prior to 2014, section 1102.5(b) stated that "[a]n employer shall not retaliate against an employee for disclosing information…" Prior to 2014, courts held that individual defendants cannot be held liable under Labor Code §1102.5. (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468 ["To establish a prima facie case of retaliation, the plaintiff "must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." [Citation.]"]; *Vierria v. Cal. Highway Patrol* (E.D.Cal. 2009) 644 F.Supp.2d 1219, 1244 ["The relevant portions of the statute clearly indicate that the statute is meant to establish prohibited activity by employers, rather than individuals."].) However, the statute was amended in 2014 and now states that "[a]n employer,

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information…" (Labor Code §1102.5(b), emphasis added.)

This Court is tasked with deciding whether individuals can be liable under section 1102.5 as it is currently written. The parties and this Court have been unable to locate any published California state court opinion that addresses this issue. There are, however, a number of Federal District Court opinions that have addressed this issue. Both Plaintiffs and Defendants discuss a number of federal district court opinions that have considered whether individual defendants can be liable under section 1102.5 after the 2014 amendments. Although not binding on this Court, unpublished federal court opinions can have persuasive value. (See, e.g. *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6.)

The district court opinions can be put into two groups. First, there are several cases that declined to rule on whether or not individuals could be liable under section 1102.5 because that question was unsettled in state law and the motion before those courts was a motion for remand. As *De La Torre v. Progress Rail Servs. Corp.* (C.D.Cal. July 31, 2015, No. CV 15-4526 FMO (GJSx)) 2015 U.S.Dist.LEXIS 100784 explained, "the court need to not resolve this issue — that is, decide whether there is individual liability for violations of §1102.5 — given that all material ambiguities in state law are construed in plaintiff's favor when assessing a sham defendant claim in connection with removal. [Citation.]" (*Id.* at *11.) Thus, these cases do not hold that individuals can be liable under section 1102.5, but only that the issue is unsettled and therefore the individual defendants are not fraudulently joined. The Court does not find these holdings to be particularly helpful to this Court. (The Court also questions the persuasive value of *De La Torre,* which states that "This Order is not intended for publication" (*Id.* at *14, emphasis removed), but notes that other cases have followed *De La Torre* and remanded cases to state court because the issue of individual liability was unsettled.)

Second, there are a group of cases that have decided that individual defendants cannot be held liable under section 1102.5. Some of these cases cite to pre-2014 opinions and the Court does not find those cases persuasive.  Other courts recognized the amendment to section 1102.5 and still held that individuals cannot be liable under that section. The Court finds the discussion in *Tillery v. Lollis* (E.D. Cal. Aug. 13, 2015, 1:14-cv-02025-KJM-BAM) 2015 U.S. Dist. LEXIS 106845 to be helpful.

*Tillery* held that individual defendants cannot be liable under section 1102.5. *Tillery* looked at similar language in the FEHA context where California courts did not hold an individual liable. The court explained that "the retaliatory conduct plaintiff alleges includes the kind of personnel decisions such as work assignments, whether to grant administrative leave, setting of work schedules and termination that only an employer or its agent can make, as in *Reno* [*v. Baird* (1998) 18 Cal.4th 640, 645]. The language of the statute on which plaintiff relies does not include clear language imposing individual liability, but rather uses the kind of language consistently associated with imposition of liability on an employer alone, as the statute did in *Jones [v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1159]." (*Id.* at *26.) *Tillery*

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

also considered the legislative history of the 2014 amendment and found that it "emphasizes that the amendment applies to an employee 'acting on behalf of the employer.' S.B. 666, 2013 Cal. Legis. Serv. Ch. 577 (2013)" and did not suggest that individuals should be held liable. (*Tillery, supra*, 2015 U.S. Dist. LEXIS 106845 at * 27.)

In *Reno*, the California Supreme Court held that an individual working for the employer could not be personally liable for discrimination. In *Jones*, the California Supreme Court held that the FEHA retaliation statute does not allow an individual to be held personally liable for retaliation. The plaintiff is *Jones* argued that the California Supreme Court should not follow *Reno* because there was different statutory language involved. (*Jones, supra,* 42 Cal.4th at 1162.) In *Jones,* the statutory language used the word "person" and thus plaintiff argued that both individuals and employers could be liable. (*Id.* at 1162.) The Supreme Court disagreed. It held that the statutory language was susceptible to more than one reasonable interpretation. (*Id.* at 1163.) The Supreme Court then found that "*Reno*'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation." (*Id.* at 1164.) The Court then considered the legislative history and the use of "person". *Jones* explained that the absence of legislative history showing that the legislature intended to make individuals liable for retaliation supported the court's conclusion that individuals should not be liable for retaliation under FEHA. (*Id.* at 1169.)

The Court finds that the language in section 1102.5 is susceptible to more than one reasonable interpretation. The Court follows the reasoning in *Jones* and *Tillery* that the retaliatory conduct alleged in this complaint – being fired or not having your contract terminated – is the type that only an employer or its agent can make. Thus, individual defendants should not be held liable for violations under section 1102.5.

This Court has also reviewed the legislative history and the history does not clearly indicate that the Legislature intended to expand liability to individual defendants where such liability did not already exist.

Finally, the Court notes that section 1102.6 discusses the burden of proof in a civil action and discusses the burden that the "employee" and the "employer" each have. "[C]ourts 'do not construe statutes in isolation, but rather read every statute with "reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' [Citation.]" (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1099-1100.) Thus, finding that individual defendants are not liable under section 1102.5 will harmonize that section with section 1102.6.

In addition to the Federal District Court cases, Plaintiffs ask this Court to consider (and take judicial notice of) a superior court judge's order from Sonoma County finding that the individual defendants can be liable under section 1102.5. Although Evidence Code §452(d) states that this Court may take judicial notice of the records of "any court of this state", Plaintiff has not cited any authority that holds it would be proper for this Court to take judicial notice of

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:   01/18/18

another superior court's order in a case involving parties unrelated to this case. Therefore, the Court denies Plaintiff's request for judicial notice.

For the reasons discussed above, the demurrer by the individual defendants is sustained without leave to amend.

*Disclosures Protected by Section 1102.5*

The District and the Individual Defendants demurrer to the FAC for the failure to state a claim, arguing that the complaint does not show that the Plaintiffs engaged in "disclosures" protected by Labor Code §1102.5.

Defendants argue that the "disclosures" in the FAC are not actionable disclosures under section 1102.5 because Plaintiffs complained about the District's document retention policy but that policy was already known to the District. The District relies on *Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832 to support their position. In opposition, Plaintiffs rely on *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538 and argue that *Mize-Kurzman* does not apply. Plaintiffs also argue that they alleged other disclosures beyond the District's policy being illegal.

*Mize-Kurzman* held that protected "disclosures" under section 1102.5 do not include reporting publicly known facts. (*Mize-Kurzman, supra,* 202 Cal.App.4th at 858.) However, *Mize-Kurzman* also noted that "California cases hold[] that a public employee's report of wrongdoing to his or her *own* employer is not excluded from qualifying as a disclosure protected under the Labor Code, the superior to whom the report is made is not the person involved in the alleged wrongdoing. [Citations.]" (*Mize-Kurzman, supra,* 202 Cal.App.4th at 859.)

*Hager* held that the protections in section 1102.5 apply to more than the first employee to disclose that information. (*Hager, supra*, 228 Cal.App.4th at 1541.) Hager explained that "[t]he plain language of former section 1102.5(b) also does not limit whistleblower protection only to an employee who discloses unlawful conduct that had not been previously disclosed by another employee....While we accept the dictionary definition of "disclosure" as used by the  court in *Mize-Kurzman, supra*, 202 Cal.App.4th 832, the court did not construe the statutory language in the context of the statute as a whole. [¶] Subdivision (e) of former section 1102.5 provides that a "report" by an employee of a government agency to his or her employer is a disclosure of information under former section 1102.5(b). A report does not necessarily reveal something hidden or unknown." (*Hager, supra*, 228 Cal.App.4th at 1549-1550.)

In addition, the analysis in *Mize-Kurzman* relied heavily on *Huffman v. Office of Personnel Management* (Fed.Cir. 2001) 263 F.3d 1341 (*Huffman*), where the federal court discussed "disclosure" under the federal Whistleblowers Protection Act, 5 U.S.C. § 2302(b)(8)(A). (*Mize-Kurzman, supra,* 202 Cal.App.4th at 851.) As *Hager* points out, *Huffman* was superseded by the Whistleblower Protection Enhancement Act of 2012, which added that a disclosure shall be not be excluded because "the disclosure was made to a supervisor or to a

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

person who participated in an activity that the employee or applicant reasonably believed to be covered by subsection (b)(8)(A)(i) and (ii)..." (Pub.L. No. 112-199 (Nov. 27, 2012) § 101(b)(2)(C), 126 Stat. 1465, 1465–1466; see also 5 U.S.C. § 2302 (e)(1)(A).)

The Court is not convinced that *Mize-Kurzman* applies, but it need not decide that issue because Plaintiffs alleged a number of actions that constitute disclosures of matters beside the District's policy. For example, Plaintiffs allege that Steele was approached by Bunger, Guy and Kino and asked to destroy records of violations of air quality. (FAC ¶22.) Steele reported this to Bachmann (her supervisor) who reported it to Eric Stevenson (his supervisor). (FAC ¶22.) There is no indication that Mr. Stevenson was aware of the potential destruction of these documents before it was reported to him. Plaintiffs also alleged that they discovered that documents had been deleted from the online database violation of the District's policy and that Bachman reported this to Mr. Stevenson. (FAC ¶25.) Again, there is no indication that Mr. Stevenson was aware that these documents had been deleted before it was reported to him. Thus, even if *Mize-Kurzman* applies, both Plaintiffs have alleged reporting conduct they thought was illegal to an individual who was unaware of the alleged illegal conduct.

Therefore, these argument fail.

*Government Immunity*

The District and the Individual Defendants demurrer to the FAC for the failure to state a claim, arguing that they are immune from liability under Government Code sections 815, 815.2, 820.2 and 821.6.

The District argues that under Government Code §815 it can only be liable for an act or omission of a public employee when provided by statutes. The District also argues that the Individual Defendants are immune section Government Code §§820.2 and 821.6 and therefore, the District must also be immune section Government Code §815.2. Section 815.2(b) states that a public entity is not liable for the acts of its employee when the employee is immune, unless otherwise provided by statute.

Labor Code section §1102.5(e) states that "[a] report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)." (Labor Code 1102.5(e); see also, *Mize-Kurzman, supra,* 202 Cal.App.4th at 856-857 [discussing cases where a public employee could sue its public employer under section 1102.5].) Thus, section 1102.5 clearly applies to public employers and the District cannot obtain immunity under Government Code §815 and §815.2.

The District's reliance on *Ross v. San Francisco Bay Area Rapid Transit Dist.* (2007) 146 Cal.App.4th 1507 is misplaced. There, the court held that the public entity was immune under section 812.5 for common law torts. (*Id.* at 513-514.) Common law torts, by their very nature,

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT: 33
HEARING DATE: 01/18/18

---

are not provided for by statute. Here, section 1102.5(e) makes clear that public entities can be liable under section 1102.5.

Therefore, the Court finds that the District is not immune from liability.

---

**16. TIME: 9:00  CASE#: MSC17-01565**
**CASE NAME: BACHMANN VS. BAY AREA AIR**
**CASE MANAGEMENT CONFERENCE**
***TENTATIVE RULING: ***

 Appear.

---

**17. TIME: 9:00  CASE#: MSC17-01584**
**CASE NAME: ARECHIGA VS U.S. BANK**
**HEARING ON OSC RE: TRO & OSC RE PRELIMINARY INJUNCTION FILED BY**
**PLAIN TIFS**
***TENTATIVE RULING: ***

Appear.

---

**18. TIME: 9:00  CASE#: MSC17-02098**
**CASE NAME: MORRIS VS JP MORGAN**
**HEARING ON DEMURRER TO COMPLAINT of MORRIS FILED BY RUSHMORE**
**LOAN MANAGEMENT SERVICES, LLC, U.S. BANK NATIONAL ASSOCIATION**
***TENTATIVE RULING: ***

Before the Court is a Demurrer filed by Defendant Rushmore Loan Management Services LLC ("Rushmore") and Defendant U.S. Bank, National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust ("US Bank") (collectively, "Defendants"). The Demurrer relates to the Complaint filed by Plaintiff Lillian Morris ("Plaintiff" or "Morris"). The Complaint pleads causes of action for (1) violation of Civil Code § 2923.7; (2) violation of Civil Code § 2923.6; (3) violation of Civil Code § 2924(b); (4) negligence; (5) intentional misrepresentation; (6) negligent

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

misrepresentation; (7) promissory estoppel; (8) to set aside trustee's sale; (9) quiet title; (10) elderly financial abuse; and (11) unfair business practices.

Defendants demur pursuant to Code of Civ. Proc. § 430.10(e) and (f) on several grounds, including judicial estoppel.

For the following reasons, the Demurrer is <u>sustained</u>, with one final opportunity to amend.

<u>Request for Judicial Notice</u>

Defendants request judicial notice of several county recorder documents, pleadings and orders from US Bankruptcy Court, Northern District of California (Oakland), and the Complaint *Mazhari v. Rushmore Loan Management* (Case No. MSC17-00748. This request is unopposed. The request is <u>granted</u>. Evid. Code §§ 452, 453.

<u>Analysis</u>

<u>Judicial Estoppel</u>

Defendants argue that Plaintiff's entire Complaint is barred by the operation of judicial estoppel.

The result of a failure to disclose any litigation likely to arise in a non-bankruptcy context triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions. *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1610 (adopting the rule of *Oneida Motor Freight, Inc. v. United Jersey Bank* (3d Cir. 1998) 848 F.2d 414) (applying doctrines of equitable and judicial estoppel to find that a debtor's failure to disclose a lender liability claim in chapter 11 bankruptcy proceedings precluded the debtor from later litigating the claim). Furthermore, a finding of bad faith is not required in lender liability cases. (*Hamilton*, *supra*, at p. 1610.) (distinguishing *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995 ("*Cloud*") and *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110 ("*Gottlieb*") where judicial estoppel was not applied). *Cloud* and *Gottlieb* did not involve lender liability, or the bankruptcy court did not confirm a plan of reorganization.

Unlike *Hamilton*, however, the Plaintiff in this case does not appear to have a confirmed bankruptcy plan. As a consequence, Plaintiff cannot be said to have successfully asserted her prior position in the bankruptcy court. *Gottlieb* 141 Cal.App.4th at 139-40 (court did not apply judicial estoppel). In *Gottlieb*, the plaintiff did not submit a reorganization plan in the prior bankruptcy proceeding, creditors did not accept a plan, and the bankruptcy court did not review or confirm a plan. *See id.* Such would appear to be the case here.

The Court declines to find that Plaintiff is barred from asserting her claims on the basis of judicial estoppel. However, even though the claims of the Complaint are not barred by the operation of judicial estoppel, Plaintiff has not alleged facts sufficient to constitute causes of action for (1) violation of Civil Code § 2923.7; (2) violation of Civil Code § 2923.6; (3) violation of Civil Code § 2924(b); (4) negligence; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) promissory estoppel; (8) to set aside trustee's sale; (9) quiet title; (10) elderly financial abuse; and (11) unfair business practices.

# CONTRA COSTA SUPERIOR COURT
MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

### HBOR Claims Generally

As a threshold matter, Defendants argue that Plaintiff's HBOR claims fail because "she is not entitled to the protection of HBOR while she is in bankruptcy." Demurrer at 5:25-26.

HBOR's definition of borrower specifically excludes "[a]n individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure." Civil Code § 2920.5(c)(2)(C).

In Opposition, Plaintiff contends that she had communications with Defendant Rushmore subsequent to her discharge. Opposition at 5:4-13. None of these allegations appear to be in the Complaint, however, and some of them would appear to overlap in time with her bankruptcy case. Furthermore, because Plaintiff's Complaint is vague as to time with respect to most of her HBOR violations, the Court cannot say with certainty that she is barred from bringing those claims. The Court cautions Plaintiff to be aware of this exclusion as she considers any further amendment to her pleading.

### Violation of Civil Code § 2923.7

Plaintiff alleges that JP Morgan Chase violated section 2923.7 because "Chase failed to promptly establish a single point of contact ('SPOC') and provide Plaintiff with one or more direct means of communication with the SPOC." Complaint at ¶ 59.

Civil Code § 2923.7 requires a SPOC to be appointed when a borrower "requests a foreclosure prevention alternative," such as a loan modification. Civ. Code § 2923.7(a).

However, Plaintiff's Complaint fails to allege any material "actual economic damages" as a consequence of these alleged violations. HBOR provides relief only for a "material" violation of the single point of contact statute. See Civ. Code § 2924.12(a)(1) ("a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.5, 2923.7, 2924.11, or 2924.17."). The Court also notes that there are no allegations with respect to either Defendant Rushmore or US Bank.

Plaintiff has failed to state facts sufficient to constitute a cause of action for violation of Civil Code § 2923.7. The demurrer to this cause of action is sustained, with one opportunity to amend.

### Violation of Civil Code § 2923.6

Civil Code § 2923.6 prohibits "dual tracking," wherein a "borrower's mortgage servicer, a mortgage service, mortgagee, trustee, beneficiary, or authorized agent" records a notice of default or notice of sale, notwithstanding a pending application for a first lien loan modification. Civ. Code § 2923.6. The ban on "dual tracking" becomes effective once the borrower submits a "complete application for a first lien loan modification." Civ. Code § 2923.6(c).

Here, the gravamen of Plaintiff's dual tracking claim is her allegation that notwithstanding the fact that she was in review for a loan modification, JP Morgan Chase recorded a NOD and NOS

- 23 -

# CONTRA COSTA SUPERIOR COURT
MARTINEZ, CALIFORNIA
DEPARTMENT: 33
HEARING DATE: 01/18/18

against the Subject Property. Complaint at ¶ 72. She further alleges that on May 4, 2017, while she was still in review for a loan modification, her home was sold at a non-judicial foreclosure sale to US Bank. Complaint at ¶ 75.

However, HBOR provides relief only for a "material" violation of the dual tracking statute. See former Civ. Code § 2924.12(a)(1) ("a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."). Plaintiff has failed to allege that any technical violations of the dual tracking provisions were "material," in the sense that but for those violations, JP Morgan Chase would have agreed to a loan modification agreement that Plaintiff could have afforded. In the absence of such allegations, Plaintiff has failed to allege that she was damaged by any alleged technical violations of 2923.6. The Court also notes that there are no allegations with respect to either Defendant Rushmore or US Bank.

Plaintiff has failed to state facts sufficient to constitute a cause of action for violation of Civil Code § 2923.6. The demurrer to this cause of action is <u>sustained</u>, with one opportunity to amend.

The Court notes that effective January 1, 2018 section 2923.6 no longer contains a prohibition on dual tracking. The prohibition on dual tracking was codified in former section 2923.6 that was repealed on January 1, 2018. Because the parties did not raise this point, the Court does not consider it at this time. However, Plaintiff may wish to consider whether to amend this cause of action in light of prevailing authority which holds that "[w]hen a pending action seeks recovery based on a statutorily based obligation, and that statutory provision is repealed by legislation not containing an express saving clause, the California courts have consistently concluded the pending actions should be abated." *Rankin v. Longs Drug Stores California, Inc.* (2009) 169 Cal.App.4th 1246, 1256.

<u>Violation of Civil Code § 2924(b)</u>

Plaintiff alleges that she "was never served with a copy of the NOD by registered or certified mail, as required by section 2924b(b)(1)[.]" Complaint at ¶ 81. As with her previous HBOR claims, however, the Court notes that there are no allegations with respect to either Defendant Rushmore or US Bank. Plaintiff has failed to state facts sufficient to constitute a cause of action for violation of Civil Code § 2924(b). The demurrer to this cause of action is <u>sustained</u>, with one opportunity to amend.

<u>Negligence</u>

To state a cause of action for negligence, a plaintiff must allege: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal. App. 4th 49, 62. "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establish a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Ass'n* (1991) 231 Cal. App. 3d 1089, 1096.

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

A lender may owe a borrower duties of care under Civil Code § 1714. See *Daniels v. Select Portfolio Servicing, Inc.* (6th Dist. 2016) 246 Cal. App. 4th 1150, 1158, 1180-1182; *Alvarez v. BAC Home Loans Servicing, L.P.* (1st Dist. 2014) 228 Cal. App. 4th 941, 944-949; *Jolley v. Chase Home Finance, LLC* (1st Dist. 2013) 213 Cal. App. 4th 872. However, neither Defendant Rushmore nor Defendant US Bank were Plaintiff's lender prior to the foreclosure sale. Furthermore, as with many of Plaintiff's other claims, there are no specific allegations with respect to either Defendant Rushmore or Defendant US Bank. All the allegations with respect to this cause of action relate to actions prior to the foreclosure sale of the subject property. See Complaint at ¶ 84.

Plaintiff has failed to state facts sufficient to constitute a cause of action for promissory estoppel. The Demurrer to this cause of action is <u>sustained</u>, with one opportunity to amend.

### Intentional and Negligent Misrepresentation

Plaintiff's causes of action for intentional and negligent misrepresentation both suffer from the same flaw with respect to both Defendant Rushmore and Defendant US Bank: as a threshold matter, Plaintiff does not allege any representations by either of them. In the absence of an allegation that Defendants represented to Plaintiff that an important fact was true, Plaintiff has failed to allege facts sufficient to state causes of action for intentional and negligent misrepresentation. The Demurrer to these causes of action is <u>sustained</u>, with one opportunity to amend.

### Promissory Estoppel

The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.

The basis for Plaintiff's promissory estoppel claim is that "Chase assured Plaintiff a proper loan modification review, and was supposed to halt the foreclosure proceedings during this review." Complaint at ¶ 121. However, there are no allegations with respect to any promises made by Defendant Rushmore or Defendant US Bank.

Plaintiff has failed to state facts sufficient to constitute a cause of action for promissory estoppel. The Demurrer to this cause of action is <u>sustained</u>, with one opportunity to amend.

### To Set Aside Trustee's Sale

"[A]s a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security." *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 ("*Lona*"). "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." *FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022.

Plaintiff relies on the federal case *Wickman v. Aurora Loan Servs., LLC* for her contention that "courts have recognized exceptions to [the] tender rule, such as when requiring it is inequitable to do, if the loan was reinstated or if the sale is void." Opposition at 11. Notwithstanding the fact

# CONTRA COSTA SUPERIOR COURT
## MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

that *Wickman* is merely persuasive authority, Plaintiff has not alleged that her loan was reinstated or that the sale was void.

Plaintiff has failed to allege facts to state a claim to set aside trustee's sale. The Demurrer is sustained, with one opportunity to amend.

### Quiet Title

Additionally, Plaintiff has not alleged tender or that she is exempt from the tender requirement. There are four exceptions to the tender requirement in the nonjudicial foreclosure context: First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counterclaim or set-off against the beneficiary. Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face. See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-13. There are no allegations in the Complaint that would support any of these exceptions.

Plaintiff has failed to allege facts to state a claim for quiet title. The Demurrer is sustained, with one opportunity to amend.

### Elderly Financial Abuse

Plaintiff's Complaint alleges financial abuse under Welfare & Institutions Code § 15610.30(a)(2). However, the Complaint does not include a single allegations against either Defendant Rushmore or Defendant US Bank. See Complaint at ¶¶ 142-149. Plaintiff has failed to allege facts sufficient to constitute a cause of action for elderly abuse. The Demurrer to this cause of action is sustained, with one opportunity to amend.

### Unfair Business Practices

Plaintiff's claim for violation of the Unfair Competition Law ("UCL"), Bus. & Prof. Code section 17200, et seq., is derivative of her HBOR claims. Because the UCL claim is duplicative of the HBOR claim, and because the HBOR can provide the same (and additional) remedies for violation of the statute, the Demurrer is sustained, with one opportunity to amend.

---

**19.  TIME:  9:00   CASE#: MSN17-0463**
**CASE NAME: CC CHILD CARE COUNCIL VS CA DE**
**SPECIAL SET HEARING ON: HEARING ON WRIT SET BY COURT/COUNSEL**
***\* TENTATIVE RULING: \****

This matter will be heard on January 25, 2018, at 9:00 a.m., in Department 33. A tentative ruling will be posted at approximately 1:30 p.m. on January 24, 2018.

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

---

**20.  TIME:  9:00   CASE#: MSN17-1948**
**CASE NAME: MATTER OF 525 VERONA AVE, DANV**
**HEARING ON PETITION RE DISTRIBUTION OF SURPLUS PROCEEDS ( FILED**
**10-19-17 BY MORTGAGE LENDER SERVICES)**
*__* TENTATIVE RULING: *__*

Appear.

---

**21.  TIME:  9:00   CASE#: MSN17-2184**
**CASE NAME: BENYAMINI VS MARTINEZ/DMV**
**HEARING ON PTN FOR WRIT OF ADMINISTRATIVE MANDAMUS ( VERIFIED)**
*__* TENTATIVE RULING: *__*

The petition is denied without prejudice. It was not served on the respondents, and so the Court cannot grant it. However, the Court will hear the petition on its merits, provided it is properly served. To that end, the Court orders as follows:

1. Petitioner shall serve the petition on all appropriate parties on or before January 31, 2018.
2. Petitioner shall serve a copy of this order on all appropriate parties on or before January 31, 2018.
3. Petitioner shall serve and file a proof of service indicating compliance with nos. 1-2 above on or before February 5, 2018.
4. Respondents shall file and serve written opposition to the petition, if any, on or before March 9, 2018.
5. Petitioner may, but is not required to, file and serve a reply to any opposition received on or before March 23, 2018.
6. The administrative record, if any, shall be lodged with the Court on or before March 23, 2018.
7. This matter is set for hearing on April 5, 2018, at 9:00 a.m., in Department 33.

---

**22.  TIME:  9:00   CASE#: MSN17-2254**
**CASE NAME: PETITION OF MARTA RODRIGUEZ**
**HEARING ON MINOR'S COMPROMISE**
*__* TENTATIVE RULING: *__*

Appear.

---

# CONTRA COSTA SUPERIOR COURT
MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

---

**23.  TIME: 1:30   CASE#: MSC14-01594**
**CASE NAME: ATHWAL VS. LEISURE HOTEL GROUP**
**SPECIALLY SET HEARING ON PROPERTY VALUATION**
***\* TENTATIVE RULING: \****

Due it's length, the tentative ruling for Line 23 is set forth at the end of this document below.

---

**ADD-ON**

---

**24.  TIME: 9:01   CASE#: MSC15-00678**
**CASE NAME: MICHAEL JOHNSON VS, LOUIS H. VOSS TRUST**
**HEARING ON MOTION TO COMPEL RESPONSE TO REQUESTS FOR PRODUCTION OF**
**DOCUMENTS  /  FILED BY ERIC WISE**
***\* TENTATIVE RULING: \****

Granted.  No opposition.

---

**23.  TIME: 1:30   CASE#: MSC14-01594**
**CASE NAME: ATHWAL VS. LEISURE HOTEL GROUP**
**SPECIALLY SET HEARING ON PROPERTY VALUATION**
***\* TENTATIVE RULING: \****

     This is a specially set final valuation hearing, conducted pursuant to Corporations Code section 17707.03.  The Court must fix the value of plaintiff Baljinderpal Athwal's 25% interest in defendant Leisure Hotel Group, LLC.

     The Court has considered the three appraisals lodged with the Court under seal, and the briefs and declarations filed by the parties.  The Court now orders as follows.

     **A.**    **Provisional Hearing On Decree Of Dissolution.**

     The Court hereby sets a provisional hearing on the entry of a decree providing for the winding up and dissolution of defendant LHG, should defendants fail to timely pay the buyout price set by this order.  The hearing is set for **May 3, 2018**, at 9:00 a.m., in Department 33.

     The parties shall file status updates, on or before April 20, 2018, advising the Court whether the buyout has been completed.  If so, the provisionally set hearing shall be dropped from calendar, and this entire action shall be dismissed with prejudice.  If not, the parties shall appear, and the Court will set a briefing schedule on what terms should be included in the decree of dissolution, and the subsequent procedural steps needed to finalize the dissolution. (See, Corp Code, § 17707.03, subd. (c)(3).)

     **B.**    **Evidentiary Matters.**

- 28 -

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

Defendants' evidentiary objections are sustained on the grounds stated.  Further, the subject exhibits were not tabbed, and the deposition testimony was not highlighted.  (Cal. Rules of Court, rule 3.1110, subd. (f); Cal. Rules of Court, rule 3.1116, subd. (c).)

The Court has not considered plaintiff Athwal's supplemental declarations, filed on November 28 and November 29, 2017.  These declarations were not authorized by the Court, and in any event are irrelevant to the present hearing.

**C.    Buyout.**

**1.    Amount.**

There are three different sets of appraisal figures before the Court.  However, all three sets fall within a reasonably close range.  Accordingly, the Court sees no need to send the matter back to the appraisers for further review, or to conduct an evidentiary hearing to determine a valuation figure *de novo*.

Plaintiff Athwal asks the Court to pick the highest non-discounted value.  However, neither side offers an analysis of why one appraisal is better supported or better reasoned than the other two.  Both sides have left that question to the Court's discretion.

The Court fixes the value of plaintiff Athwal's 25% interest at **$ 3,225,000**.  This is the non-discounted pro rata share of defendant LHG's fair market value, as shown in the Pinnacle Advisory Group appraisal.  Having reviewed the three appraisals, the Court finds the Pinnacle appraisal to be the most persuasive.

**2.    Time.**

If defendants fail to pay this sum to plaintiff Athwal on or before **April 18, 2018**, the Court will enter a decree providing for the winding up and dissolution of defendant LHG.  (See, Corp. Code, § 17707.03, subd. (c)(3).)  Plaintiff requested a 90-day buyout period in his opening brief, and defendants did not object to a 90-day buyout period in their responsive brief.

**D.    Factors.**

The Court has carefully considered the parties' arguments for a figure that is higher or lower than the one set above.  The Court has rejected those arguments, for the following reasons.

**1.    Discount For Minority Status.**

Defendants argue that the value of plaintiff Athwal's 25% interest should be discounted to reflect plaintiff's status as a minority owner of defendant LHG.  The Court finds that this argument lacks merit.

*"Fair Market Value"*

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

Defendants rely heavily on the Court's reference to "fair market value" in the Court's interim order granting defendant LHG's motion for a stay of dissolution.  This reliance is misplaced.  The Court was simply quoting the governing statute, which provides in pertinent part as follows:

> In any suit for judicial dissolution, the other members may avoid the dissolution of the limited liability company by purchasing for cash the membership interests owned by the members so initiating the proceeding, the "moving parties," at their fair market value.

(Corp. Code, § 17707.03, subd. (c)(1).)

Corporations Code section 17707.03 does not define the term "fair market value," as used in the statute.  The matter is left for case law interpretation.

The Court's prior order left open the question of how the phrase "fair market value," as used in the statute, should be interpreted.  As the appraisers correctly recognized, this is a legal question for the Court to decide.

### *CCP § 1263.320*

Defendants cite Civil Code section 1263.320 to support their interpretation of "fair market value."  However, the Civil Code has no section 1263.320.

Presumably, defendants meant to cite the Code of Civil Procedure, which does have a section that generally defines fair market value for purposes of eminent domain actions. (Code Civ. Proc., § 1263.320.)  The Court does not find this statute helpful in deciding the more specific question now before the Court.

The Court further notes that the two alternative figures shown in the Pinnacle appraisal are both "fair market value" figures.  One is a "pro rata share" of defendant LHG's fair market value as a going concern, and the second figure applies a 40% discount to this pro rata share. Both figures were derived from a fair market value analysis.  The Court has looked to governing case law to determine which of these two fair market value figures should be used for purposes of this valuation hearing.

### *Case Law*

The Court finds the case law cited by plaintiff Athwal on this point to be persuasive. (See, *Goles v. Sawhney* (2016) 5 Cal.App.5th 1014, 1019-20; *Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477, 485-487.)  While these decisions interpret Corporations Code section 2000, which is applicable to corporations, and not section 17707.03, which is applicable to LLCs, the rationale of the decisions applies with equal force to the minority owners of LLCs. Defendants cite no contrary decisions, and fail to persuade the Court that it should interpret the phrase "fair market value" in section 17707.03 as meaningfully different from the phrase "fair value" in section 2000.

- 30 -

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

**2.      Supplement For "Depressed Value Due to Mismanagement."**

Plaintiff Athwal argues that the value of his 25% interest should be increased based on alleged "mismanagement."  The Court finds that this argument lacks merit.

### No Derivative Claims

Plaintiff Athwal bases his argument on two decisions holding that the value of a plaintiff's derivate claims must be considered in a valuation proceeding.  (See, *Goles*, *supra*, 5 Cal.App.5th at 1018-19; *Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371, 1380-81.)  This is because "[a] derivative claim is a property right that belongs to the corporation," and "[i]t is properly viewed as an 'asset' of the corporation."  (*Cotton*, *supra*, at 1380.)

Plaintiff Athwal's argument lacks merit because the operative pleading, the Fourth Amended Complaint, contains no derivative claims.  All of plaintiff's derivative claims were eliminated at the pleading stage — to the extent that plaintiff ever intended to assert derivative claims at all.

In the ruling on the motion for judgment on the pleadings, which was directed to the Second Amended Complaint, the Court instructed plaintiff Athwal to identify all derivative claims in separately captioned causes of action, and to include allegations addressing the required element of demand futility.  Instead, plaintiff chose to abandon any such derivative claims in the Third Amended Complaint, which was filed on September 26, 2016.  All causes of action in the Third Amended Complaint were labeled as claims personal to plaintiff Athwal.  Finally, in the Court's ruling on the demurrer to the Third Amended Complaint, affirmed on January 12, 2017, the Court eliminated all derivative claims "disguised" as personal claims, without leave to amend.

The Court has been advised that all of plaintiff Athwal's personal claims against the individual defendants have been settled, as part of a global settlement involving two other Superior Court actions.  However, even if they had remained unsettled, those personal claims would not be a corporate asset that could be valued as part of this valuation proceeding.

### No Submission To The Appraisers

As a second, fully independent ground for rejecting plaintiff Athwal's argument, the Court finds that plaintiff waived the right to have any derivative claims valued in this proceeding because he did not request that the three court-appointed appraisers perform such a valuation, and did not supply them with any of the evidence now belatedly submitted to the Court for consideration.  (See, Baxter Dec., filed on 11-6-17, untabbed exhibits "A" through "G".)  Plaintiff acknowledges that "the three appraisers worked under the assumption that the Hotel was well run."  (Brief Regarding Valuation, filed on 11-6-17, p. 7, lines 12-13.)

Having failed to seek the valuation of any derivative claims from the court-appointed appraisers themselves, plaintiff Athwal instead invites the Court to (1) peruse the three voluminous appraisal reports, (2) glean hints of what plaintiff characterizes as mismanagement

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:  33
HEARING DATE:  01/18/18

from the raw data in the appraisal reports, despite the appraisers' assumption that the hotel was well managed, and then (3) 'play expert' by placing a dollar figure on the impact of such mismanagement in a fair market value analysis.  The Court declines to do so, finding no legal basis for adopting such an approach.

### 3.    Interest.

Plaintiff Athwal argues that he should receive pre-judgment interest on the valuation figure set by the Court, at the rate of 10%, calculated retroactively to January 17, 2017.  This argument lacks merit.

Plaintiff Athwal cites Civil Code section 3287, and two federal court decisions construing that statute.  However, section 3287 is inapplicable: it applies to "damages."  Plaintiff cites no law suggesting that a valuation figure fixed pursuant to Corporations Code section 17707.03 can somehow be deemed "damages," and that pre-judgment interest can then be awarded on the valuation figure even though no judgment for damages incorporating the valuation figure will ever be entered.  If the Legislature had intended for trial courts to award interest in a valuation proceeding, it would have so specified within the detailed procedural provisions of section 17707.03.

The Court further notes that, under the decisions plaintiff Athwal cites, pre-judgment interest would run only from the date on which the valuation figure is fixed as a specific dollar amount.  In the case at bar, that would be the date of this order, and not January 17, 2017.

### 4.    Appraisal Fees.

Plaintiff Athwal argues that he should receive, as part of the valuation figure, his one-half share of the appraisal fees.  This argument lacks merit.

Corporations Code section 17707.03, subdivision (c)(3), provides that plaintiffs in a dissolution action may receive the "expenses" they incur in a valuation proceeding, but only if "the purchasing parties do not make payment for the membership interests within the time specified."  The Court will deal with the issue of plaintiff Athwal's expenses in this valuation proceeding only if defendants fail to timely make the payment specified in Part C above.  Plaintiff cites no legal authority supporting an alternative interpretation of section 17707.03.

### 5.    Issues If Involuntary Dissolution Proceeds.

Plaintiff Athwal argues that he will be entitled to recover his expenses from the $ 40,000 undertaking posted by defendants, if defendants fail to timely make the payment specified in Part C above.  Plaintiff also argues that a receiver should be appointed, and that the Court should carefully consider dissolution accounting issues, if this occurs.  It is premature to address any such issues now.  The Court will set a briefing schedule on all such issues at the provisionally set hearing on May 3, 2018, should this prove necessary.

### 6.    Tax Returns.

# CONTRA COSTA SUPERIOR COURT

MARTINEZ, CALIFORNIA
DEPARTMENT:   33
HEARING DATE:   01/18/18

Plaintiff Athwal argues that "LHG should be ordered to indemnify Athwal for any detriment caused him for LHG's decision to amend its tax returns for prior years."  (Brief Regarding Valuation, filed on 11-6-17, p. 14, lines 3-5.)  This argument lacks merit.  Plaintiff cites no legal authority for the proposition that the Court may summarily adjudicate an indemnity claim that has not yet even been pleaded, much less that the Court may do so in the narrowly prescribed procedural context of a section 17707.03 valuation proceeding.  The Court's task in this proceeding is limited: fix a dollar value, and set a date for payment.

### 7.         Costs as Prevailing Party.

Plaintiff Athwal, citing section 1032 of the Code of Civil Procedure, argues that he should be awarded costs of litigation as the prevailing party — immediately.  This argument lacks merit.  The Court cannot make a determination of which side is the prevailing party at this time.

If defendants timely make the payment specified in Part C above, this entire action will be dismissed with prejudice.  Either side would then be entitled to file a memorandum of costs, and conceivably a motion for attorney fees, under the statutorily prescribed procedures for recovering costs post-judgment.

If defendants do not timely make the payment specified in Part C above, the Court will enter an interlocutory decree for the winding up and dissolution of defendant LHG.  Before entering such a decree, the Court would seek briefing on whether the decree should include an award of litigation costs, or whether such costs should be claimed at a later date.

The Court offers no preliminary assessment concerning which side might be deemed the prevailing party in either circumstance, or whether the Court might find that there is no prevailing party in either circumstance.  The answer is not obvious.  Plaintiff Athwal may obtain the requested relief of dissolving defendant LHG, but will not obtain a recovery on either (1) the now-dismissed derivative claims or (2) the now-settled personal claims.