# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MERIDIAN SENIOR LIVING, LLC;
KENNETH KIESWETTER, As An Individual; and
DOES 1 through 100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
BONNIE SUMMER

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

Electronically **FILED**
by Superior Court of California
County of Ventura
03/15/2021
MICHAEL D. PLANET
Executive Officer and Clerk
Joan Foster
Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: SUPERIOR COURT FOR THE STATE OF
*(El nombre y dirección de la corte es):* CALIFORNIA
COUNTY OF VENTURA - HALL OF JUSTICE
800 South Victoria Avenue
Ventura, CA 93009

CASE NUMBER:
*(Número del Caso):*
56-2021-00551949-CU-WT-VTA

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stephen J. Reiss, Esq. (SBN 58106), LAW OFFICES OF STEPHEN J. REISS, 4766 Park Granada, Suite 206,
Calabasas, CA 91302; Telephone: (818) 591-7990; Facsimile: (818) 591-7781; sjreiss@gmail.com; reiss.legalassistant@gmail.com

DATE: 03/15/2021                  Clerk, by  Michael D. Planet  , Deputy
*(Fecha)*                         *(Secretario)*  Joan Foster   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Meridian Senior Living LLC

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* Corp Code 17701.16

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Electronically
**FILED**
by Superior Court of California
County of Ventura
**03/15/2021**
MICHAEL D. PLANET
Executive Officer and Clerk

Joan Foster
Deputy Clerk

Ventura Superior Court Accepted through eDelivery submitted 03-15-2021 at 01:27:21 PM

1 | Stephen J. Reiss, Esq. (SBN 58106)
  | LAW OFFICES OF STEPHEN J. REISS
2 | 4766 Park Granada, Suite 206
  | Calabasas, CA 91302
3 | Telephone: (818) 591-7990
  | Facsimile: (818) 591-7781
4 | Email: sjreiss@gmail.com;
  | reiss.legalassistant@gmail.com

6 | Kevin C. Boyle, Esq. (SBN 190533)
  | LAW OFFICES OF KEVIN C. BOYLE
7 | 24007 Ventura Blvd, Suite 260
  | Calabasas, CA 91302
8 | Telephone: (818) 591-1755
  | Facsimile: (818) 591-1756
9 | Email: kboyle@kcboylelaw.com

10 | Attorney for Plaintiff,
   | BONNIE SUMMER

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF VENTURA - HALL OF JUSTICE

| | |
|---|---|
| BONNIE SUMMER, | CASE NO.: 56-2021-00551949-CU-WT-VTA |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **1. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** |
| MERIDIAN SENIOR LIVING, LLC; KENNETH KIESWETTER, As An Individual; and DOES 1 through 100, Inclusive, | **2. VIOLATION OF CALIFORNIA LABOR CODE §1102.5 (WHISTLEBLOWER STATUTE)** |
| Defendants. | |

### GENERAL ALLEGATIONS

1. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants MERIDIAN SENIOR LIVING, LLC ("MERIDIAN") and DOES 1 through 40, and each of them, were corporations regularly employing more than five persons and engaged as a matter of commercial actuality, in purposeful economic activity, within the County of Ventura.

1

COMPLAINT FOR DAMAGES

2. At all times herein mentioned, Plaintiff BONNIE SUMMER was a resident of the State of California.

3. Plaintiff is informed and believes, and thereon alleges, that Defendants KENNETH KIESWETTER ("KIESWETTER") and Does 41 through 100, and each of them, were, at all times herein mentioned, residents of the State of California and were managers, officers, supervisors, managing agents, and/or employees of MERIDIAN having the actual or apparent authority to participate in or recommend decisions affecting the Plaintiff's job benefits and employment status.

4. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, and therefore, Plaintiff sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by their conduct.

5. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned, each of the Defendants, including the fictitiously named Defendants, was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope and course of such agency.

6. Plaintiff is further informed and believes, and thereon alleges, that at all times relevant hereto, each of the Defendants and the fictitiously named Defendants acted in concert and in furtherance of each others interest.

7. Beginning on or about February 23, 2020, Plaintiff was employed by Defendant MERIDIAN as a Sales Director in MERIDIAN's Regency Palms Senior Living facility in Oxnard, California. Regency Palms was a new facility and Plaintiff's position necessarily required her to be in close physical contact and work directly with a number of sales persons and administrative support staff at the facility.

///

8. Despite the statewide shut-down orders due to the Corona virus (Covid-19) pandemic, Defendants, and each of them, continued to require Plaintiff and all office workers to work on-site within the facility. Plaintiff began and continued to voice her complaints to management, specifically to Regional Sales Director - KIESWETTER, Executive Director - Kenneth Mahler ("Mahler"), and Regional Sales Manager Glen Cummins ("Cummins"), about her reasonably based concerns pertaining to the risks that she and others were taking by being required to work on-site in the facility. However, those complaints were ignored by management, and Plaintiff was subjected to retaliation and punishment for voicing her opinion, culminating in her employment being terminated because she opposed MERIDIAN's practices that endangered herself, her co-workers, potential residents, customers, and clients of MERIDIAN.

9. Plaintiff reasonably believes, from her interactions with MERIDIAN's management, that Defendants were financially driven to collect deposits and fill the facility with residents for their upcoming official opening, which continued to be postponed throughout Plaintiff's employment, largely because of circumstances surrounding the pandemic. Plaintiff was told by Executive Director Mahler that MERIDIAN and its investor did not want the community, or other hospitals in the area, to "think there was 'Covid' in their building" and to "keep collecting deposits."

10. Following her continuing complaints, in or about August of 2020, Plaintiff was called to a meeting with her direct superior, KIESWETTER, who sought to change Plaintiff's job description to be out of the facility and to make face-to-face calls throughout the community at least 55% of the time. Further, on a daily basis, Plaintiff was required by KIESWETTER to be present at the facility for their "stand up" meeting and then be on her way making calls out of the office.

11. Plaintiff again voiced her opinion to KIESWETTER that these aforesaid requirements posed a risk to her, as well as to the administrative staff. Specifically, Plaintiff complained to KIESWETTER that the requirement to work on sight and to provide tours of the facility to whomever would come into the building, without proper safety protocols, posed an

undue risk to her, to administrative staff, to the facilities residents, and to members of the public. In response to Plaintiff's aforementioned complaints, KIESWETTER curtly admonished Plaintiff, "Then go work at a Starbucks," or "Sit outside some restaurant and order a tea."

12. Plaintiff's position included making phone calls to promote the facility and advance her relationship with potential customers; such calls were described as "point calls." Although Plaintiff had been making "point calls," she remained concerned and had continued to complain about mixing these of out-of-office activities with management's requirement that she also work on-site.

13. In or about August of 2020, Plaintiff became aware that one of the employees in the facility's office had contracted Covid-19. Plaintiff also became aware of a second employee at the facility who had contracted Covid. However, Regional Manager Cummins had instructed the affected employee(s), "not to tell anyone."

14. Plaintiff and all the employees were subsequently tested under the pretext of "merely a precaution." However, management never advised Plaintiff or the facilities employees of the health risk that Plaintiff knew was present within the facility.

15. Plaintiff was informed that Executive Director Mahler was having a meeting with the MERIDIAN investors. The investors are a Real Estate Investment Trust ("REIT"), that is separate from MERIDIAN and which provides the physical facility MERIDIAN operates. When Mahler returned, he told Plaintiff that the investors were "concerned about opening the facility and making sure that there was no Covid in the building."

16. When Plaintiff asked the Mahler if these investors were made aware of the cases of Covid at the facility, Mahler responded "Evidently they're not." It thus became abundantly clear to Plaintiff that Defendant MERIDIAN, its management, and its investors placed their financial objectives above the health, safety, and welfare of the Plaintiff, administrative staff, and residents of the facility. Moreover, it was clear to Plaintiff that management had been working to separate Plaintiff from the other employees as she continued to voice her aforesaid complaints.

17. Regional Sales Director KIESWETTER continued to demand that "on-site" events continue and that potential residents and customers be lured into the facility for tours and

face-to-face marketing. One such event had approximately 300 participants (*i.e.* members of the public) invited to the building to obtain information, which was falsely described by MERIDIAN as a "drive-thru" event. However, all the information was inside the facility, and those invited were told to go in, where they were to be provided a tour before receiving the written information material about the facility and program.

18. Shortly thereafter, on or about November 30, 2020, Plaintiff was informed by KIESWETTER that she was terminated. Plaintiff contends, and therefore alleges, that her termination was pretextual and retaliatory on account of the above-described complaints she made to MERIDIAN's management, as well as on account of the fact that she continued to advocate for her own safety, as well the safety of the facility's administrative staff and residents.

19. Plaintiff further contends that MERIDIAN did not want its investors, its employees, the facility's residents, and/or members of the public to be aware of the health and safety risks that she reasonably perceived were present in the facility. Thus, Plaintiff's honest and reasonable belief as to the assessment of those risks were counter to Defendants' financial objectives, which they put above the health and safety of the employees and the community at large.

## FIRST CAUSE OF ACTION
### AGAINST DEFENDANTS MERIDIAN SENIOR LIVING, LLC;
### AND DOES 1 THROUGH 40, AND EACH OF THEM
### [WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY]

20. Plaintiff incorporates the allegations set forth in paragraphs 1 through 19, as if set forth in full herein.

21. Under the laws of the State of California, an employer's traditional common law right to discharge an at-will employee is subject to limits imposed by public policy. A broad and fundamental public interest in encouraging employees to disclose illegal, unethical, or unsafe practices in the workplace, where such public policy is grounded in state or federal statutes, the

Constitution, or state or federal regulations, protects employees from termination or other retaliation by the employer as a result of such disclosure by the employee.

22. The public interest invoking the public policy exception, as aforesaid, is set forth by the broad and fundamental public policies pertaining to workplace safety, as codified in Labor Code §§6400, 6401, 6402, 6403 and 6404, (Cal-OSHA), which provide for the protection of an employee's ". . . life, safety and health." Further, the public policy protecting employees from retaliatory dismissal for protesting working conditions, which they reasonably and in good faith, believe constitute a hazard to their own health and safety, as well as the health and safety of others, has also been codified. Per the administrative enforcement provisions of Labor Code §§6310 and 6312, the California Legislature has expressly prohibited discharge, retaliation, or discrimination of an employee for protesting unsafe working conditions "to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative." [§6310(a)(1)]. Pursuant to Hentzel v. Singer Co. (1982) 138 Cal. App. 3d 290; 188 Cal. Rptr. 159, ". . . the Legislature did not intend the remedial procedures of section 6312 to be exclusive . . ." (Id.@ p.301); ". . . an employee is protected against discharge or discrimination for complaining in good faith about working conditions or practices which he reasonably believes to be unsafe, whether or not there exists at the time of the complaint an OSHA standard or order which is being violated" (Id.@ pp. 299, 300); and ". . . [a civil] complaint is not foreclosed by the provisions of OSHA." (Id.@ p.304). The public policy implicated in such a case extends beyond the question of fairness to the particular employee; "it concerns protection of employees against retaliatory dismissal for conduct which, in light of the statutes, deserves to be encouraged, rather than inhibited." 138 CA3d at 298.

23. The public interest invoking the public policy exception, as aforesaid, is further evidenced by California's emergency temporary Cal/OSHA standards on COVID-19 infection prevention, approved on November 30, 2020. [See: Cal. Code Regs. title 8, Subchapter 7- General Industry Safety Orders - §§ 3205,3205.1, 3205.2, 3205.3,3205]. Specifically, §3205 COVID-19 Prevention, subsection (c) provides:

6
**COMPLAINT FOR DAMAGES**

Ventura Superior Court Accepted through eDelivery submitted 03-15-2021 at 01:27:21 PM

> "Written COVID-19 Prevention Program - Employers shall establish, implement, and maintain an effective, written COVID-19 Prevention Program, which may be integrated into the employer's Injury and Illness Program required by section 3203, or be maintained in a separate document. The written elements of a COVID-19 Prevention Program shall include:
>
> (1) System for communicating. The employer shall do all of the following in a form readily understandable by employees:
>
> (A) Ask employees to report to the employer, ***without fear of reprisal***, COVID-19 symptoms, possible COVID-19 exposures, and possible COVID-19 hazards at the workplace. [emphasis added].

24. The public interest invoking the public policy exception, as aforesaid, is also set forth by AB-685, signed into law on September 17, 2020, by Governor Gavin Newsom, which amends <u>California Labor Code</u> §§6325, 6409.6. and 6432 and creates new COVID-19 reporting requirements for employers, increases mandatory public disclosure of COVID-19 outbreaks, and expands the powers of Cal-OSHA to cite and shut down employers with worksite infections in a streamlined process. Specifically, §6409.6 , subsection (f) provides:

> "An employer ***shall not retaliate*** against a worker for disclosing a positive COVID-19 test or diagnosis or order to quarantine or isolate." [emphasis added]

25. The public interest invoking the public policy exception, as aforesaid, is further delineated by the U.S. Department of Labor's Occupational Safety and Health Administration (OSHA), Section 11(c) of the Occupational Safety and Health Act of 1970, 29 USC 660(c), which prohibits employers from retaliating against employees for exercising a variety of rights guaranteed under the OSHA Act, such as filing a safety or health complaint with OSHA, raising a health and safety concern with their employers, participating in an OSHA inspection, or reporting a work-related injury or illness. "The U.S. Department of Labor's Occupational Safety and Health Administration (OSHA) is reminding employers that it is illegal to retaliate against

workers because they report unsafe and unhealthful working conditions during the coronavirus pandemic. Acts of retaliation can include terminations, demotions, denials of overtime or promotion, or reductions in pay or hours." [OSHA National News Release - April 8, 2020].

26. The actions of Defendants MERIDIAN, and each of them, constituted a tortious wrongful termination of Plaintiff, in retaliation for Plaintiff's disclosures of the aforementioned working conditions, that Plaintiff reasonably and in good faith believed, constituted hazards to Plaintiff's own health and safety, as well as to the health and safety of Plaintiff's co-employees, potential residents, customers and clients of MERIDIAN, as well as members of the public. Said dangerous working conditions and hazards thus involve fundamental interests to the public and present serious public policy concerns. The wrongful termination of Plaintiff was a substantial factor in causing those damages and injuries to Plaintiff, as will be set forth below.

27. As a legal result of the aforesaid acts of said Defendants, and each of them, Plaintiff has lost, and will continue to lose, income and benefits in an amount to be proven at time of trial. Plaintiff claims such amount as damages, together with prejudgment interest, pursuant to Civil Code §3287 and/or any other provision of law providing for prejudgment interest.

28. As a legal result of the aforesaid acts of said Defendants, and each of them, Plaintiff was personally humiliated and has become mentally upset, distressed, and aggravated. Plaintiff claims general damages for such mental distress and aggravation in an amount to be proven at time of trial.

29. As a further legal result of the said acts of the said Defendants, and each of them, Plaintiff was required to employ, and continues to employ, medical practitioners, physicians, and surgeons to examine, treat, and care for Plaintiff, and did, and continues to, incur medical and incidental expenses, which will be shown according to proof.

30. The acts of said Defendants, and each of them, taken towards Plaintiff, as hereinabove alleged, were carried out by managerial employees, agents, officers, and directors of Defendants MERIDIAN and DOES 1 through 40, and each of them. Plaintiff is informed and believes that the alleged wrongful acts taken toward plaintiff were authorized, directed, and/or

Ventura Superior Court Accepted through eDelivery submitted 03-15-2021 at 01:27:21 PM

1 ratified by the aforesaid individuals, and others, who are officers, directors, and/or managing
2 agents of Defendant MERIDIAN with a conscious disregard of Plaintiff's rights and with the
3 intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud, or malice under
4 California Civil Code §3294, entitling Plaintiff to punitive damages in an amount appropriate to
5 punish and set an example of said Defendants.

## SECOND CAUSE OF ACTION
### AGAINST DEFENDANTS MERIDIAN SENIOR LIVING, LLC.;
### KENNETH KIESWETTER;
### AND DOES 1 THROUGH 100, AND EACH OF THEM
### [VIOLATION OF CALIFORNIA LABOR CODE §1102.5
### (WHISTLEBLOWER STATUTE)]

14   31.   Plaintiff incorporates the allegations set forth in paragraphs 20 through 30, as if set forth in full herein.

16   32.   At all times herein mentioned, Labor Code §1102.5 was in full force and effect and was binding on MERIDIAN, and each of them. This section prohibits an employer, or any person acting on behalf of the employer, from retaliating against an employee for disclosing violations of law or regulations, or because the employer believes that the employee disclosed or may disclose violations of law or regulations, to a government or law enforcement agency, or to a person with authority over the employee, or to another employee who has the authority to investigate, discover, or correct the violation or noncompliance of law or regulations, or for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

25   33.   As has been aforesaid, Plaintiff has been subjected to adverse employment actions by MERIDIAN for having reported her reasonable based concerns and good faith belief as to MERIDIAN's alleged violations of the COVID-19 Emergency Standards and working conditions, which she reasonably and in good faith, believed constituted a hazard to her own

health and safety, as well as to the health and safety of Plaintiff's co-employees, residents, customers, and clients of MERIDIAN, and members of the public.

34. The retaliatory termination of Plaintiff's employment on the part of Defendants MERIDIAN, KIESWETTER, and each of them, was a substantial factor in causing damages and injuries to Plaintiff, pursuant to California Labor Code §1102.5(f) and §1105(j), as well as those damages set forth by reallegation of paragraphs 27 through 30 (in paragraph 31).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants and DOES 1 through 100, and each of them, for:

1. All medical expenses, actual, consequential, and incidental losses, including loss of income and benefits, according to proof, together with prejudgment interest, pursuant to Civil Code §3287 and/or §3288;

2. General damages for emotional distress and mental suffering in a sum according to proof;

3. Civil penalties, per Labor Code §1102.5(f);

4. Attorneys' fees, per Labor Code §1102.5(j);

5. Exemplary and punitive damages in a sum appropriate to punish said Defendants and set an example for others;

6. Such other and further relief as the Court may deem proper.

Dated: March 15, 2021

LAW OFFICES OF STEPHEN J. REISS/
LAW OFFICES OF KEVIN C. BOYLE

/s/ Stephen J. Reiss
STEPHEN J. REISS
Attorneys for Plaintiff,
BONNIE SUMMER

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF VENTURA

800 South Victoria Avenue
Ventura, CA 93009
(805) 289-8525
WWW.VENTURA.COURTS.CA.GOV

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Case Number: **56-2021-00551949-CU-WT-VTA**

Your case has been assigned for all purposes to the judicial officer indicated below.
**A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.**

| ASSIGNED JUDICIAL OFFICER | COURT LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Mark Borrell | Ventura | 40 |

**HEARING**

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
| | | |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**

APPEARANCE AT THE ABOVE HEARING IS MANDATORY.
Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).
If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).

**Advance Jury Fee Requirement**

At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**

To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**

Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670. In addition, see Local Rule 7.01 regarding notice to the teleconference provider. The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date: 03/16/2021

Clerk of the Court,
By: *Joan Foster*
Joan Foster, Clerk

VEN-FNR082

NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Ventura Superior Court Accepted through eDelivery submitted 03-15-2021 at 01:27:21 PM

VN242

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. Many courts encourage or require parties to try ADR before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. You can read more information about these ADR processes and watch videos that demonstrate them at *www.courtinfo.ca.gov/programs/adr/types.htm*. A form for agreeing to use ADR is attached.

### Potential Advantages and Disadvantages

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable

### Most Common Types of ADR

**Mediation** – A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners.

**Settlement Conferences** – A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration** – The parties present evidence and arguments to a neutral person called an "arbitrator" who then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration*, they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration*, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial, or want an expert in the subject matter of the dispute to make a decision.

### Local ADR Programs for Civil Cases

**Mediation** – The Ventura Superior Court has maintained a mediation program since April 1, 1993. Its goals are to speed resolution of cases by bringing the parties together before they have made a major economic and emotional investment in litigation, and to increase awareness of this effective method of alternative dispute resolution.

Mediators need not be attorneys, but must have 25 hours of formal mediation training by a recognized mediation training/education provider. Mediator duties include a brief review/preparation time and three hours of hearing time on a pro bono basis and pursuant to such rules as may be designated for mediators by the Ventura Superior Court.

Party Pay Mediation Panel – The court has a second mediation panel where mediators are paid by the parties rather than offering their services pro bono. Mediators on the "party pay" panel must have completed 25 hours of formal mediation training and have participated as mediator a minimum of 25 court assigned mediations with a minimum hearing time of two hours each from any California Superior Court. All mediators on the "party pay" panel will provide three hours of mediation services per case at the rate of $150 per hour to be shared equally by all participating parties.

**Arbitration** – Arbitration is normally an informal process in which a neutral person (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or nonbinding arbitration. Binding arbitration is designed to give each side a resolution of their dispute when they cannot agree between themselves or with a mediator. If the arbitration is nonbinding, any party can reject the arbitrator's decision and request a trial.

**Mandatory Early Settlement Conference** – The MESC program was implemented through joint efforts of the Superior Court and the Ventura County Bar Association working primarily through the Bench/Bar Subcommittee. Cases that are appropriate for the program are identified and referred to a settlement officer to conduct a settlement conference. The parties have the opportunity for a serious exchange of facts, theories, and evaluations at the earliest possible time with an impartial attorney volunteer conducting the conference. The basic difference between cases assigned to the MESC and Mediation programs is the nature of the case and the relief sought. If the injury or damage is compensable in money damages and there is no emotional component or "hidden agenda" on the part of one or more of the parties, as is frequently the case in mediation cases, then the case is sent to the MESC program. MESC may be appropriate when negotiations between the parties have not proven successful.

**Settlement Conference** – Settlement Conferences may be mandatory or voluntary. In general, if the settlement conference is mandatory, ordered by the judge, the parties to the dispute and their attorneys will meet with a judge who conducts conference aimed at negotiating an agreement to settle the dispute rather than doing through the formal trial process.

**More Information about Court-Connected ADR:** Visit the court's webpage at www.ventura.courts.ca.gov.

**Dispute Resolution Programs Act (DRPA) funded ADR Program** - The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code 465 et seq.):
- Ventura Center for Dispute Settlement, 4001 Mission Oaks Blvd., #L, Camarillo, CA 93012
  805-384-1313
- Ventura County District Attorney's Consumer Mediation Unit
  805-654-3110

**Private ADR** – To find a private ADR program or neutral, search the internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice** – To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California Courts Website at www.courtinfo.ca.gov/selfhelp/lowcost.

VN164

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | Telephone Number | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR (Name): | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA ☐ 800 SOUTH VICTORIA AVE. VENTURA, CA 93009 | | |
| PLAINTIFF/PETITIONER DEFENDANT/RESPONDENT | | |
| **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS** | | CASE NUMBER: |

The parties and their attorneys stipulate that the claim(s) in this action shall proceed to the following alternative dispute resolution process:

☐ Private Mediation                          ☐ Volunteer Mediation _____

☐ Mandatory Early Settlement Conference      ☐ Assignment to Private Judge

☐ Binding Arbitration                        ☐ Non-Binding Arbitration

☐ Other (specify) : _____

It is further stipulated that the deadline for selection of a neutral and completion of the ADR process is: _____
_____

_____           _____
Plaintiff (print)                          Defendant (print)

_____           _____
Signature of Plaintiff                     Signature of Defendant

_____           _____
Plaintiff's Attorney (print)               Defendant's Attorney (print)

_____           _____
Attorney's Signature                       Attorney's Signature

Dated: _____            Dated: _____

**IT IS SO ORDERED.**

   IT IS FURTHER ORDERED THAT: _____
_____
_____

Dated: _____            _____
                                          Judicial Officer

Optional Form                  **STIPULATION TO USE OF ALTERNATIVE DISPUTE**
VN164 (01/02)                         **RESOLUTION PROCESS**

Stephen J. Reiss, Esq. (SBN 58106)
LAW OFFICES OF STEPHEN J. REISS
4766 Park Granada, Suite 206
Calabasas, CA 91302
Telephone: (818) 591-7990
Facsimile: (818) 591-7781
Email: sjreiss@gmail.com;
reiss.legalassistant@gmail.com

Kevin C. Boyle, Esq. (SBN 190533)
LAW OFFICES OF KEVIN C. BOYLE
24007 Ventura Blvd, Suite 260
Calabasas, CA 91302
Telephone: (818) 591-1755
Facsimile: (818) 591-1756
Email: kboyle@kcboylelaw.com

Attorney for Plaintiff,
BONNIE SUMMER

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF VENTURA - HALL OF JUSTICE

| | |
|---|---|
| BONNIE SUMMER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MERIDIAN SENIOR LIVING, LLC;<br>KENNETH KIESWETTER, As An<br>Individual; and DOES 1 through 100,<br>Inclusive,<br><br>　　　　　Defendants. | CASE NO.: 56-2021-00551949-CU-WT-VTA<br>[Assigned for All Purposes to the Hon. Mark Borrell - Dept. 40]<br><br>**PLAINTIFF BONNIE SUMMER'S STATEMENT OF DAMAGES**<br><br>Complaint Filed:　　March 15, 2021<br>Trial Date:　　　　None Set Yet |

TO:　　DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

　　　Pursuant to California Code of Civil Procedure §425.11, Plaintiff, BONNIE SUMMER, hereby states the nature and extent of damages claimed in this action as follows:

SPECIAL DAMAGES

　　1.　　Medical Expenses to date: Undetermined at this time.

　　2.　　Loss of Earnings to date: Undetermined at this time.

1  Medical expenses, actual, consequential, and incidental losses; including loss of
2  earnings and benefits, loss of future earning capacity, property damage, as well as additional
3  items of special damages, are continuing to be incurred in amounts unascertainable at the present
4  time, or are unknown to Plaintiff at this time.
5  Plaintiff hereby reserves the right to supplement this response to reflect all special
6  damages when ascertained.

## GENERAL DAMAGES

Emotional distress and mental suffering to said Plaintiff caused by the acts and conduct described in the Complaint on file herein, in an amount in excess of $1,000,000.00.

## EXEMPLARY AND PUNITIVE DAMAGES

The amount of punitive damages sought on the basis of allegations contained in the Complaint, is in the sum of $1,000,000.00. Plaintiff alleges this sum is appropriate based on (1) the reprehensibility of Defendants' conduct, (2) the relationship to Plaintiff's actual damages, and (3) the amount necessary to deter future conduct by Defendants in light of Defendants' financial resources.

Dated: March 16, 2021

LAW OFFICES OF STEPHEN J. REISS/
LAW OFFICES OF KEVIN C. BOYLE

/s/ Stephen J. Reiss
STEPHEN J. REISS
Attorneys for Plaintiff,
BONNIE SUMMER

---

2
**PLAINTIFF BONNIE SUMMER'S STATEMENT OF DAMAGES**